UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                           :

STERLING SELECT II ADVISORY, LLC,      :

                              Plaintiff,      :

                       -v-              :          23 Civ. 2939 (JPC)

                                             :

ARGUS INFORMATION AND ADVISORY   :      OPINION AND ORDER
SERVICES, INC. *et al.*,               :

                                           :

                        Defendants.     :

                                           :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Sterling Select II Advisory, LLC ("Select") began a business relationship with Defendant Argus Information and Advisory Services, Inc. ("Argus Inc."), hoping to develop several potentially lucrative opportunities. But when those hopes were dashed, and the relationship soured, Select sued Argus Inc. and a handful of affiliated entities, including Argus Information & Advisory Services, LLC ("Argus LLC"), TransUnion Intermediate Holdings, Inc. ("TUIH"), and Verisk Analytics, Inc. ("Verisk"). Before the Court are various motions from all the parties concerning subject matter jurisdiction, personal jurisdiction, and the merits. Specifically, Select has moved to remand this case to state court for lack of subject matter jurisdiction; Verisk and TUIH have moved to dismiss for lack of personal jurisdiction; and all Defendants have moved to dismiss certain claims for failure to state a claim. In response to Defendants' motions, Select seeks leave to file an amended complaint.

For the reasons that follow, the Court denies Select's motion to remand, grants TUIH's motion to dismiss for lack of personal jurisdiction, grants Argus LLC's motion to dismiss for failure to state any claims against it, grants Argus Inc.'s motion to dismiss for failure to state non-contractual claims against it, and denies Select's motion for leave to file an amended complaint.

The Court, however, stays Verisk's motion to dismiss for lack of personal jurisdiction pending jurisdictional discovery and, if necessary, an evidentiary hearing.

## I. Background

### A. Facts[1]

Select is a venture development and investment platform with a network of real-estate and sports-and-entertainment ("S&E") industry participants. Am. Compl. ¶ 4. Argus Inc. maintains consumer purchasing data on behalf of government agencies and financial-services firms that service the consumer-purchasing industry, including major credit-card issuers, and offers its customers marketing-related insights based on the data it maintains. *Id.* ¶¶ 2-3. Sensing a potential synergy, Select and Argus Inc. signed a non-disclosure agreement ("NDA") in August 2016 and discussed a collaboration where they would test the S&E market's interest in Argus Inc.'s data-driven insights and the willingness of S&E organizations to add their data to Argus Inc.'s database. *Id.* ¶¶ 4, 42-44. The parties' goal was to then build and sell products together. *Id.* ¶ 4.

To that end, in December 2016, Select and Argus Inc. entered into a business development agreement ("BDA") and an associated six-month Statement of Work ("SOW-1"), under which they would ███████████████████████████████████ ████████████████████ *Id.* ¶¶ 5, 45-50. The BDA and the SOW-1 addressed revenue sharing, ███████████████████████████████, and Argus Inc.'s monthly payments to Select. *Id.* ¶¶ 6, 47, 50. And those agreements specified that ████████████████ ████████████████████████████████████████

---

[1] The facts contained in this section, which are assumed true solely for purposes of this Opinion and Order, are taken from Plaintiff's Amended Complaint, Dkt. 54 ("Am. Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

██████████████████████████████████████ *Id.* ¶ 46.  Within the six-month

SOW-1 period, Select secured three contributions of data plus revenue, and projected far more in

potential customers and revenues.  *Id.* ¶¶ 53-54.

When the SOW-1 term ended, the parties negotiated a second Statement of Work ("SOW-

2"), although with some material changes to the parties' relationship.  *Id.* ¶¶ 55-56.  Under the

SOW-2, ████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ *Id.* ¶¶ 56-59, 63.  Select also ████████████████

██████████████████████████ *Id.* ¶ 61.  Similar to the SOW-1, the SOW-2 specified that

the parties were to ████████████████████████████████████████

███████████████ *Id.* ¶ 60.  While the SOW-2 was formally executed on January 25, 2018, its term

ran from June 1, 2017 to December 31, 2019.  *Id.* ¶ 62.

After Select and Argus Inc. changed their revenue-sharing arrangement under the SOW-2,

Select introduced a series of S&E organizations as potential customers for Argus Inc.'s marketing-

data insights.  *Id.* ¶¶ 9-11, 64-71.  Select alleges that Argus Inc. failed to "provide the requisite

data and analytics," along with "competent internal support," for "all the revenue opportunities

and for product development in a timely manner and in accordance with the BDA and SOW's

schedules for client deliverables," thus "destroy[ing] the[se] opportunities."  *Id.* ¶¶ 23-24.  These

failures, ranging from 2017 through 2019, included opportunities with Madison Square Garden

("MSG"), Fox Studios, Riot Games, the NBA, the MLB, and Aramark.  *Id.* ¶¶ 71-79, 157-176.

During that same time period, Select and Argus explored expanding beyond the S&E market into

the real-estate industry, but that real-estate venture fell through in June 2019 for similar reasons.

*Id.* ¶¶ 180-200.

Also during the SOW-2 period, Select came up with a product called ████████████████

3

██████████████████████ ("SAMI"), ████████████████████████

██████████████████████████████████████ *Id.* ¶¶ 80-82. SAMI

was to be anchored by Argus Inc.'s data in a digestible format. *Id.* ¶¶ 85-86. In May 2018, Select

shared the SAMI concept with the New York Mets, who expressed enthusiasm about the product

and guided Select in setting a basic subscription price for SAMI. *Id.* ¶¶ 86-88. Select and Argus

Inc. then set about developing SAMI for the Mets, but while Argus. Inc. represented that it could

hold up its end of the bargain in developing the product, it allegedly "was never able to (or refused

to) deliver a fully functioning version of SAMI." *Id.* ¶¶ 89-97. Indeed, Select alleges that Argus

Inc. blew through various launch dates throughout 2019, showing a "lack [of] urgency" despite

the SOW-2's December 31, 2019 expiration date. *Id.* ¶¶ 99-112.

Despite Argus Inc.'s various alleged missteps up until that point, the parties entered into a

third Statement of Work ("SOW-3"), which term lasted from January 1, 2020 through December

31, 2020. *Id.* ¶ 113. The SOW-3's revenue-splitting provisions were set even more in Select's

favor, and once again Argus was obligated to ████████████████████████

████████████████████ *Id.* ¶¶ 114-117. And the SOW-3 specified that the parties were to

██████████████████ *Id.* ¶ 122. Indeed, as a condition to the SOW-3, the Mets contracted

with Argus Inc. for a three-year period commencing ████████████████████████

████████████████████████ the price the Mets would pay Argus Inc. for SAMI was

subsidized by Select through the SOW-3's particular revenue-sharing scheme. *Id.* ¶¶ 115, 125-

126. Argus Inc., however, failed to complete SAMI during the SOW-3 period, and by December

31, 2020, this putatively lucrative opportunity with the Mets was lost. *Id.* ¶¶ 127-151. According

to Select, the missed deadlines were mainly the responsibility of David Taylor, Argus Inc.'s Vice

President of Data Analytics, who exhibited "gross negligence" and even "deliberate sabotage," as

he allegedly admitted that he made less money from Select's work (because of the parties' revenue-

sharing arrangement) compared to that of Argus Inc.'s other partners like Nielsen, a data analytics company—a reality which Select alleges disincentivized him from working on Select's projects. *Id.* ¶¶ 1, 68, 128, 140, 251.

In addition to SAMI, the SOW-3 provided for the exploration of another opportunity known as the "Product Partner Strategy." *Id.* ¶¶ 118-122.  As part of the Product Partner Strategy, the SOW-3 included ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ *Id.* ¶¶ 122-124.  The first Product Partner was ROI Influencer Media, Inc. ("ROI"), a provider of social media sales data and analytics, with whom ██████████████████████████████████████████

████████████████████████████ *Id.* ¶¶ 201, 204.  Argus Inc. and ROI themselves executed a Services Agreement on December 31, 2019, under which ROI would pay Argus Inc. for ████████████████████████████████████████

████████████████████████ *Id.* ¶¶ 202-203.  According to Select, Argus Inc. never provided the data needed to complete the pilot program, and the licensing negotiations became a sticking point: Select alleges that Argus proposed "wildly inappropriate and commercially unreasonable terms." *Id.* ¶¶ 213-217.  As a result of Argus Inc.'s actions, Select lost the value of its equity position in ROI, causing it about $5 million in losses.  *Id.* ¶ 218.

In an effort to salvage the Product Partner Strategy in light of these difficulties, Select entered into a non-disclosure agreement on November 6, 2020 with a company called Predict, which was ROI's technology team that had been working on the pilot program, to discuss replacing ROI with Predict.  *Id.* ¶¶ 219-220.  On February 1, 2021, Predict retained Select under a consulting agreement, *id.* ¶ 221, and Select negotiated a binding term sheet for ████████████████████, *id.* ¶ 222.  But when it came time for Argus Inc. to approve Predict as a Product Partner, Argus Inc.

5

required cumbersome due diligence requirements which led to the demise of Predict's Product Partner candidacy; Predict never finalized an agreement with Select for the equity stake, and by September 30, 2021, Select's relationship with Predict had completely broken down. *Id.* ¶¶ 226-230. The breakdown of that relationship, Select alleges, was because Predict had negotiated and signed a master services agreement with a company called Commerce Signals, another of Argus Inc.'s business partners, thus circumventing Select and the SOW-3's ████████ tail. *Id.* ¶¶ 25, 232-237.

While most of the negotiations with Predict occurred in 2021—after the December 31, 2020 expiration of the SOW-3—Select and Argus Inc. had simultaneously been negotiating their own continued relationship, this time in the form of a three-year license agreement. *Id.* ¶ 224. The proposed license agreement would allow Select "to attempt to monetize, through Product Partners, all of the prior data insight products created" during the parties' course of dealing, including SAMI. *Id.* While Lisa Bonalle-Hannan, Argus Inc.'s Senior Managing Director, approved the proposal on January 12, 2021, Argus Inc. never finalized and executed the licensing agreement, ending the relationship with Select. *Id.* ¶¶ 7, 224, 238, 254-258.

By the time Argus Inc.'s relationship with Select ended, Nielsen—Argus Inc.'s business partner—announced in October 2021 the Nielsen Impact Score ("NIS"), a product which Select alleges "mirrors SAMI in every meaningful way." *Id.* ¶¶ 239-240. In creating the NIS, Select asserts, Nielsen used Select's designs and confidential information, including the intellectual property in SAMI and Argus Inc.'s data set that had originally been intended for Select. *Id.* ¶¶ 240, 245. And on May 31, 2022, Nielsen announced an expanded version of the NIS, called the NIS Pro, which targeted professional sports organizations. *Id.* ¶ 242. The NIS Pro's first customer was the Mets; other customers included the NBA and the MLB. *Id.* ¶ 243.

On January 17, 2024, Nielsen announced a collaboration, allegedly with TUIH, to promote

the same products Select and Argus Inc. had developed a few years before. *Id.* ¶ 247. TUIH had acquired from Verisk, on April 18, 2022, an entity called Verisk Financial Services ("VFS"), which in turn oversaw Argus Inc. *Id.* ¶ 33. Select alleges upon information and belief that TUIH "oversaw all decisions related to Argus [Inc.] and its strategic decision-making, including Nielsen's use of former SAMI technology, the NIS, to develop NIS Pro," and that Nielsen and TUIH "now seek to expand the application of the Argus [Inc.] data across industries," just as Select and Argus Inc. had originally sought to do. *Id.* ¶¶ 246, 248.

**B.      Procedural History**

On March 8, 2023, Select filed suit against Argus Inc. and Argus LLC (the "Argus Defendants") in the Supreme Court of New York, New York County. Dkt. 1 ("Notice of Removal"), Exh. A. (Argus LLC is an inactive company that merged into Argus Inc. on December 21, 2020, and Argus Inc. is alleged to be "a successor to and mere continuation of Argus LLC." Am. Compl. ¶¶ 29-32.) The Argus Defendants removed the suit to this Court on April 7, 2023, alleging that "[t]here is complete diversity jurisdiction between the parties, as, upon information and belief, Plaintiff is a New York citizen while one defendant, Argus LLC, no longer exists and the other defendant, Argus Inc., is a Delaware corporation wholly owned, controlled and operated by parent company TransUnion, which is based in Chicago." Notice of Removal at 1; *see also id.* ¶¶ 7-13 (explaining the basis for diversity jurisdiction under 28 U.S.C. § 1332). In connection with removal, the Argus Defendants submitted an affidavit from Craig LaChapelle, Vice-President of Market Development, Card & Banking at TransUnion, detailing the "corporate structure and history" of Argus Inc. and Argus LLC, including after "TransUnion acquired all of VFS, and consequently, Argus Inc" and explaining why Argus Inc.'s principal place of business was in Chicago, Illinois. Dkt. 2 ("LaChapelle 4/7/2023 Aff.") ¶¶ 1-2, 5-10. Attached to that affidavit is a Form 10-K filed with the United States Securities and Exchange Commission by a registrant

named "TransUnion," discussing the acquisition of Argus Inc.  LaChapelle 4/7/2023 Aff., Exh. C at 8, 47, 87.

On April 26, 2023, Select filed a motion to remand to state court, arguing that because Argus Inc.'s principal place of business was in New York, not Illinois, Select and Argus Inc. were both citizens of New York such that complete diversity did not exist between the parties.  Dkts. 12-14.  After the remand motion was fully briefed, *see* Dkts. 17-18, 20, 22, Select filed a letter on August 18, 2023, seeking leave to file a motion to amend the Complaint, Dkt. 26.  The proposed amendment, Select explained, would seek to "join additional parties," including an "Illinois based entity" Select identified as "TransUnion Corp." and Nielsen.  *Id.* at 1.  Select "intend[ed] to pursue claims against" Nielsen and TransUnion Corp. "for the same conduct already alleged in the Complaint," and added that because Nielsen was "domiciled in New York," the "addition of a New York entity [would] materially impact the pending motion for remand, rendering the arguments in support of this Court's retention of subject matter jurisdiction moot."  *Id.* at 1-3.

On September 5, 2023, the Court stayed the action pending resolution of the remand motion and further explained that because any motion to amend the Complaint could "be significantly impacted" by resolving the motion for remand, the Court would set a briefing schedule on the motion to amend "at the time it decide[d]" the remand motion.  Dkt. 30.  On May 22, 2024, the Court held a conference to discuss the motion to remand; at that conference, the Court denied Select's motion to remand without prejudice to refiling in the future and set a briefing schedule on the motion to amend the Complaint.  Dkts. 32, 35, 46.  Consistent with that briefing schedule, Select filed a proposed amended Complaint on June 20, 2024, seeking to add Nielsen, TUIH (identified as "f/k/a TransUnion Corp."), Verisk, and two other defendants not relevant here.  Dkt. 40.  In opposing amendment, the Argus Defendants argued that Select should not be allowed to add Nielsen as a defendant because Select's "sole motive" in doing so was "to destroy diversity

jurisdiction." Dkt. 43 at 2. As for TUIH and Verisk, the Argus Defendants identified TUIH as "a subsidiary of the publicly-traded company TransUnion," and argued that leave to amend should be denied "because the claims asserted against them would be futile." *Id.* at 1 n.3, 3. In arguing futility, the Argus Defendants asserted that Select was "not seeking to join [TUIH] or Verisk based on any specific actions they have taken," but did not assert that doing so would be futile for lack of personal jurisdiction. *Id.* at 15-24.

On February 19, 2025, this Court denied Select's motion to amend to the extent it sought to add non-diverse defendants like Nielsen, but granted the motion to the extent it sought to add TUIH and Verisk. *Sterling Select II Advisory, LLC v. Argus Info. & Advisory Servs., LLC*, No. 23 Civ. 2939 (JPC), 2025 WL 547795, at *1 (S.D.N.Y. Feb. 19, 2025). The Court found that allowing joinder of Nielsen and the other non-diverse defendants "would not serve the ends of fundamental fairness and justice" because such amendment had "the deliberate purpose of divesting this Court of jurisdiction." *Id.* at *6 (internal quotation marks omitted). And the Court explained that it was "too early to consider whether the remaining claims [Select] seeks to bring" against TUIH and Verisk "would be futile," thus granting the motion to amend "as to Select's request to join Verisk and [TUIH] and to plead its proposed additional causes of action against those Defendants and Argus." *Id.* at *1, *7. But the Court made clear that the Defendants named in the amended Complaint could "reraise the futility arguments" made by "timely requesting leave to file a motion to dismiss." *Id.* at *7.

On February 26, 2025, Select filed the Amended Complaint, naming Argus Inc., Argus LLC, TUIH, and Verisk as Defendants. Dkt. 54. The Amended Complaint pleads fifteen causes of action:

- Breach of Contract—of the intellectual-property provision of the BDA—against all Defendants ("Count 1"), Am. Compl. ¶¶ 271-281;

- Misappropriation of Trade Secrets against all Defendants ("Count 2"), *id.* ¶¶ 282-292;

9

- Breach of Contract—of the revenue-sharing provisions of the BDA and the Statements of Work—against all Defendants ("Count 3"), *id.* ¶¶ 293-301;

- Tortious Interference with a Prospective Business Advantage—including the MSG, Fox Studios, Riot Games, NBA, MLB, Aramark, and real-estate opportunities—against all Defendants ("Count 4"), *id.* ¶¶ 302-307;

- Tortious Interference with a Prospective Business Advantage—the Predict opportunity—against Argus Inc., Argus LLC, and Verisk ("Count 5"), *id.* ¶¶ 308-314;

- Tortious Interference with Contract—involving Predict—against Argus Inc., Argus LLC, and Verisk ("Count 6"), *id.* ¶¶ 315-320;

- Breach of Contract—of the industry-standards provision of the BDA—against Argus Inc., Argus LLC, and Verisk ("Count 7"), *id.* ¶¶ 321-326;

- Breach of Contract—of the commercially-reasonable-resources provision of the SOW-2—against Argus Inc., Argus LLC, and Verisk ("Count 8"), *id.* ¶¶ 327-332;

- Breach of Contract—of the provision to sufficiently complete SAMI under the SOW-3—against Argus Inc. and Argus LLC ("Count 9"), *id.* ¶¶ 333-338;

- Unjust Enrichment against all Defendants ("Count 10"), *id.* ¶¶ 339-346;

- Breach of Contract—of the Product Partner Strategy provisions of the SOW-3—against Argus Inc., Argus LLC, and Verisk ("Count 11"), *id.* ¶¶ 347-355;

- Breach of the Implied Covenant of Good Faith and Fair Dealing against Argus Inc., Argus LLC, and Verisk ("Count 12"), *id.* ¶¶ 356-363;

- Gross Negligence against Argus Inc. and Argus LLC ("Count 13"), *id.* ¶¶ 364-372;

- Fraud in the Inducement—involving the SOW-2—against Argus Inc. and Argus LLC ("Count 14"), *id.* ¶¶ 373-378; and

- Fraud in the Inducement—involving the SOW-3—against Argus Inc., Argus LLC, and Verisk ("Count 15"), *id.* ¶¶ 379-385.

For these claims the Amended Complaint seeks damages, disgorgement, and costs. *Id.* at 71-72.

After filing the Amended Complaint, Select moved this Court on March 5, 2025 to reconsider its prior decision denying leave to amend to add non-diverse defendants like Nielsen. Dkts. 60-62. On July 15, 2025, the Court denied that reconsideration motion, finding

"unpersuasive" Select's "contention that its request for leave to amend was principally motivated by newly discovered facts" rather than to "destroy subject matter jurisdiction." *Sterling Select II Advisory, LLC v. Argus Info. & Advisory Servs., LLC*, No. 23 Civ. 2939 (JPC), 2025 WL 1936668, at *1-4 (S.D.N.Y. July 15, 2025).

Before this Court resolved the reconsideration motion, on March 27, 2025, Select also filed a renewed motion to remand to state court based on Argus Inc.'s purported New York citizenship. Dkts. 73, 75 ("Remand Motion"), 77 ("Harrison Remand Decl."). The Argus Defendants filed their response to the remand motion on April 10, 2025. Dkts. 82 ("Remand Opposition"), 83 ("Mendelsohn Decl."), 84 ("LaChapelle 4/10/2025 Aff."). Select filed its reply on April 17, 2025. Dkt. 86 ("Remand Reply").

After TUIH and Verisk appeared, TUIH filed a letter on March 11, 2025, seeking leave to file a motion to dismiss the Amended Complaint because Select had failed "to allege facts indicating that [TUIH] exercised complete dominion and control over Argus Inc. with respect to the claims at issue." Dkt. 63 at 3. On April 16, 2025, the Court held a status conference at which it granted Defendants leave to file motions to dismiss the Amended Complaint. 4/16/2025 Minute Entry. At that conference, TUIH's counsel represented that TUIH is "a shell entity that has no employees and no operations at all," Dkt. 87 at 6:23-7:3, and Verisk notified the Court that it intended to move to "dismiss on lack of personal jurisdiction" given that the Amended Complaint "does not actually allege any acts taken by Verisk or a Verisk employee in New York," *id.* at 8:7-9:5.

On May 6, 2025, all Defendants moved to dismiss the Amended Complaint. Verisk moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkts. 90, 91 ("Verisk MTD"), 92 ("Wong Decl."). TUIH moved to dismiss for lack of personal jurisdiction under Rule

11

12(b)(2), Argus LLC moved to dismiss entirely for failure to state a claim under Rule 12(b)(6), and Argus Inc. moved to dismiss the non-breach-of-contract causes of action—*i.e.*, Counts 2, 4, 5, 6, 10, 12, 13, 14, and 15—for failure to state a claim.  Dkts. 93, 94 ("Argus/TUIH MTD"), 95 ("Williams Decl.").  Select filed its oppositions on June 18, 2025, Dkts. 105 ("Opposition to Verisk MTD"), 106 ("Opposition to Argus/TUIH MTD"), 108 ("Harrison MTD Decl."), 109 ("Steele MTD Decl."), and moved to seal those oppositions and file redacted versions on the public docket, Dkts. 102-104.  All of the Defendants replied on July 2, 2025.  Dkts. 110 ("Verisk MTD Reply"), 111 ("Argus/TUIH MTD Reply").  Select then sought leave to file a sur-reply to Verisk's motion to dismiss, Dkt. 112, which the Court granted, along with the opportunity for Verisk to file a supplemental brief responding to Select's sur-reply, Dkt. 115.  Select filed its sur-reply on July 30, 2025.  Dkts. 117 ("Sur-Reply to Verisk MTD"), 118 ("Steele Sur-Reply Decl.").  Verisk filed its supplemental response on August 6, 2025.  Dkt. 119 ("Verisk Sur-Reply Response").

Just before filing their respective motions to dismiss, on April 30, 2025, TUIH and Verisk sought to stay discovery against them given the purported lack of personal jurisdiction over those entities.  Dkt. 89.  On July 30, 2025, this Court found "good cause to stay discovery" as to TUIH and Verisk and thus stayed discovery against them, explaining that it would consider Select's "request for expedited jurisdictional discovery in connection" with resolving Select's pending remand motion.  Dkt. 116.  As to the parties for whom discovery was not stayed, on August 15, 2025, the Court entered a Civil Case Management Plan and Scheduling Order ("CMP") setting a fact-discovery deadline of February 2, 2026, an expert-discovery deadline of April 3, 2026, and a deadline to file a motion for leave to amend the Amended Complaint of September 15, 2025.  Dkt. 124.

On September 15, 2025, Select moved for leave to amend, Dkts. 125-127, although the next day this Court denied that motion without prejudice for failure to file a pre-motion letter in

12

accordance with Section 6.A of this Court's Individual Rules and Practices in Civil Cases, Dkt. 128. After the parties filed their respective pre-motion letters, Dkts. 133-134, the Court ordered Select to file its motion to amend by October 10, 2025, Dkt. 135. Consistent with that order, Select moved to amend the Amended Complaint on October 10, 2025. Dkts. 139 ("Motion to Amend"), 140, 141 ("Harrison Motion to Amend Decl."). The proposed Second Amended Complaint drops TUIH as a Defendant and adds TransUnion LLC and TransUnion. Harrison Motion to Amend Decl., Exh. A ("Proposed Second Am. Compl."). The Argus Defendants filed their opposition on October 24, 2025, Dkts. 143 ("Motion to Amend Opposition"), 144, and Select replied on October 31, 2025, Dkt. 145 ("Motion to Amend Reply").

After resolving two discovery disputes between Select and the Argus Defendants, the Court granted a two-week extension of the discovery deadlines. *See* Dkt. 142; 1/15/2026 Minute Entry. Under that revised schedule, fact discovery closed on February 17, 2026, and expert discovery will conclude on April 17, 2026. *See* Dkt. 155.

All told, before the Court are several motions ripe for review: Select's motion to remand, Verisk's motion to dismiss for lack of personal jurisdiction and failure to state a claim, TUIH's motion to dismiss for lack of personal jurisdiction and failure to state a claim, the Argus Defendants' motion to dismiss for failure to state a claim, Select's motion for leave to amend the Amended Complaint, and Select's motions to seal its motion-to-dismiss opposition papers.

## II. Motion to Remand

The Court begins, as it must, with whether it has subject matter jurisdiction over this action, or whether it must remand the action to state court. Because the Court concludes that Argus Inc. has met its burden to show that removal based on diversity jurisdiction was proper, Select's remand motion is denied.

A.       **Legal Standard**

"The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017); *see Platinum-Montaur Life Sci., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction, and it must prove jurisdiction by a preponderance of evidence." (internal quotation marks omitted)).  A district court has "original diversity jurisdiction" under 28 U.S.C. § 1332 "only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same state." *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998) (internal quotation marks omitted).[2]  "Where removal is based on diversity jurisdiction, there must be complete diversity both at the time of removal and at the time the state court complaint was filed." *Mata v. CF E 86, LLC*, No. 25 Civ. 10277 (JPO), 2026 WL 18898, at *1 (S.D.N.Y. Jan. 2, 2026) (internal quotation marks omitted).

The "citizenship of a limited liability company is determined by the citizenship of each of its members," *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016), and an "individual's citizenship" is "determined by his domicile," *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 53-54 (2d Cir. 2019) (internal quotation marks omitted).  A corporation is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business," and the corporation's principal place of business, in turn, is its "nerve center"—that is, the place where its "officers direct, control, and coordinate the corporation's activities," which is

---

[2] While "[t]here is a second component to diversity jurisdiction: the amount in controversy must be in excess of the sum or value of $75,000," *Amelio v. Houri*, No. 22 Civ. 975 (JPC), 2022 WL 355435, at *2 (S.D.N.Y. Feb. 7, 2022) (citing 28 U.S.C. § 1332(a)), that component is not at issue here, *see* Notice of Removal ¶¶ 12-13 (alleging that "the amount in controversy exceeds $75,000" because Select claimed millions of dollars in damages).

"normally" the location of its "headquarters," *Hertz Corp. v. Friend*, 559 U.S. 77, 80, 92-93 (2010) (citation modified).

**B.    Discussion**

In the Notice of Removal, Argus Inc. asserts that Select is a citizen of New York because as an LLC, its members—Christopher J. Steele and J. Christopher Golden—are domiciliaries of New York. Notice of Removal ¶ 7 & n.2. Select does not dispute that it is a citizen of New York, or that TUIH and Verisk are not citizens of New York. Indeed, the entire basis of Select's motion to remand is that "both Plaintiff and Argus Inc. are citizens of New York." Remand Motion at 3. As it is also undisputed that Argus Inc. is incorporated in Delaware, Notice of Removal ¶ 10, the remand motion turns entirely on whether Argus Inc.'s principal place of business when the action was brought and removed was in New York.

On April 7, 2023, in connection with removal, Argus Inc. filed a sworn affidavit from LaChapelle—the TransUnion executive—declaring that Argus Inc.'s principal place of business was at TransUnion's corporate headquarters in Chicago, Illinois. LaChapelle 4/7/2023 Aff. ¶¶ 5-6. As LaChapelle explained, after TransUnion's April 18, 2022 acquisition of Argus Inc., there had "been an orderly transition in the executive team, corporate authority, financial systems, and decision-making" of Argus Inc. *Id.* ¶ 7. By the time of LaChapelle's affidavit, Argus Inc.'s President was based at TransUnion's corporate headquarters in Chicago, as were the key members of the team that oversaw "the integration of Argus Inc.'s business into TransUnion's business"; plus, "the majority of [the] Board of Directors of Argus Inc. [were] TransUnion employees and [were] based in Chicago, and the Board regularly conduct[ed] its meetings in Chicago." *Id.* ¶¶ 7-9. So at that "point in time, virtually all of Argus Inc.'s corporate control, authority, direction and decision-making occur[red] in and from TransUnion's corporate headquarters in Chicago." *Id.* ¶ 10. At bottom, based on LaChapelle's testimony, by the time Select brought its suit in state court

15

on March 8, 2023, and Argus Inc. removed the suit to federal court on April 7, 2023, Argus Inc.'s "nerve center"—and thus principal place of business—was in Illinois, not New York. *Hertz*, 559 U.S. at 92-93.

Rather than argue that Argus Inc.'s nerve center changed in the month between the filing in state court and removal, Select argues that "Argus Inc. has consistently maintained its principal place of business in New York since the time the Complaint was filed in State court and at the time of the Original Defendants' removal." Remand Motion at 8. That argument hinges on two sources of information: Argus Inc.'s filings in another action, and materials taken from the Internet.[3] *See id.* at 4-10. But neither source dissuades the Court from concluding that Argus Inc. has shown by a preponderance of the evidence that its principal place of business at the relevant time was in Illinois rather than New York.

First, Select points to statements made by Argus Inc. in an August 2024 motion-to-dismiss brief and a February 2025 answer filed in a District of Delaware lawsuit declaring Argus Inc.'s principal place of business to be in New York. Remand Motion at 4-8 (citing *JPMorgan Chase Bank, N.A. v. Argus Info. & Advisory Servs. Inc.*, No. 24:cv-348 (D. Del.)); *see* Harrison Remand

---

[3] The parties fight over whether Select can incorporate its past filings in connection with its prior motion to remand, *see* Remand Motion at 1 (purporting to "incorporate[] by reference" its prior papers), which was denied without prejudice. *Compare* Remand Opposition at 6-7 (asserting that incorporation by reference "is improper and would circumvent the applicable word count limitations"), *with* Remand Reply at 2-3 (disagreeing with that assertion). The Court disapproves of this practice, as whether or not it violates the word count, "such a practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which 'incorporated' arguments are actually being relied upon." *Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, No. 7:09-CV-0196 (GTS/ATB), 2012 WL 2522651, at *2 n.2 (N.D.N.Y. June 27, 2012). Indeed, it is not this Court's responsibility to sift through hundreds of pages of before-filed documents without Select pointing to their continued relevance. *See* Harrison Remand Decl., Exhs. A-D (431 pages). In any event, Select's primary argument in support of the first motion to remand—that TransUnion's headquarters being in Chicago was "not determinative of the [location of the] headquarters of its subsidiary, Argus[] Inc.," Dkt. 14 at 6-7; *accord* Dkt. 20 at 5-6—does not follow, as LaChapelle clearly explained why *Argus Inc.'s* nerve center was also in Chicago. LaChapelle 4/7/2023 Aff. ¶¶ 7-9 (affirming that many, if not all, of Argus Inc.'s executives were then based in Chicago).

Decl., Exhs. E ("Original Delaware Answer"), F ("Delaware Motion to Dismiss").  As for the brief, Argus Inc. indeed stated that its principal place of business was in New York, Delaware Motion to Dismiss at 13, but expressly disclaimed that the plaintiff's "factual allegations" in that case—including allegations about where Argus Inc. had its principal place of business—were "accepted as true solely for purposes of Rule 12(b)(6)," *id.* at 3 n.1.  While Select argues that this statement is an "admissible party admission[]," Remand Motion at 6, an admission must be "an intentional, clear, and unambiguous statement of fact," *In re Motors Liquid. Co.*, 957 F.3d 357, 360-61 (2d Cir. 2020), which Argus Inc.'s caveated and parroted statement was not.  And "an attorney's unsworn statements in a brief are not evidence," *Flores v. Bondi*, 152 F.4th 73, 81 (2d Cir. 2025) (citation modified), unlike the sworn statements of LaChappele.

As for the answer, Argus Inc. did initially admit that it was "a corporation incorporated under the laws of Delaware with a principal place of business in White Plains, New York" at the time the complaint in that case was filed on March 19, 2024—that is, after this case was initiated and removed.  Original Delaware Answer at 1, 5.  But Argus Inc. has since amended its answer, now admitting that its "principal place of business *was* located in White Plains, New York . . . until the time Argus [Inc.] was acquired by TransUnion" in April 2022, and that "[a]fter the acquisition, while Argus still maintains offices in White Plains, New York, its principal place of business became Chicago, Illinois, which is the location where key decision makers for Argus are located." Mendelsohn Decl., Exh. 2 ("Amended Delaware Answer") at 5 (emphasis added); Mendelsohn Decl., Exh. 3 (order granting Argus Inc.'s motion to amend and "deem[ing] filed" the Amended Delaware Answer as of March 28, 2025).  Despite the original answer being superseded by the amended answer, Select argues that "this Court should consider the original *JPMorgan* Answer, which contains an admission that Argus Inc.'s principal place of business is located in New York," Remand Motion at 6, and that it "should be afforded weight by this Court," Remand Reply at 5.

17

That is true enough.  *See Oberlander v. Coinbase Glob. Inc.*, No. 23-184-cv, 2024 WL 1478773, at *3 (2d Cir. Apr. 5, 2024) (summary order) ("[A]n allegation in a superseded pleading ceases to be a conclusive judicial admission, even as it may remain competent evidence for submission to the factfinder." (internal quotation marks omitted)).  But as Argus Inc. persuasively points out, the question is *how much* weight should be afforded that statement, and Select cites no "authorities that support the proposition that an original answer that is subsequently corrected in an amended answer should somehow be afforded as much, or more, evidentiary weight than the amended answer."  Remand Opposition at 10.  After all, the "effective pleadings in the case" have "the standing of judicial admissions," while "[a]mended, withdrawn, or superseded pleadings are no longer judicial admissions," even if they "may be used as evidentiary admissions."  2 McCormick on Evid. § 257 (9th ed. 2025).  So the Court affords the original answer's statement little weight relative to the amended answer and sworn testimony in the LaChapelle affidavit, especially given that Argus Inc. "unequivocally corrected the statement at issue."  Remand Opposition at 10; *cf. In re Motors Liquid. Co.*, 957 F.3d at 359-61 (holding that a "mistaken citation" in an answer that had since been superseded was not a judicial admission); *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 122 (2d Cir. 1990) (finding as "conclusive" a judicial admission where the party "at no time moved to amend its amended answer and does not now claim fraud or mistake").

Second, Select argues that "Argus Inc.'s own website and LinkedIn pages[] demonstrate[] that Argus Inc. has consistently maintained its principal place of business in New York since the time the Complaint was filed in State court and at the time of the Original Defendants' removal."  Remand Motion at 8-10 (citing Harrison Remand Decl., Exhs. G, H, I, J).  Three of the exhibits Select cites are screenshots of the website of a company called "Argus Advisory," dated from September 30, 2022 through the time of filing the instant remand motion, which list an address in White Plains, New York as "Headquarters."  Harrison Remand Decl., Exhs. G (contemporaneous

website screenshot), H (website screenshot from 9/30/2022), I (website screenshot from 5/22/2023).   The fourth is a screenshot of the LinkedIn page of a company called "Argus Information and Advisory Services," as of the date the instant remand motion was filed, again listing the company's "Headquarters" as White Plains, New York, albeit with a different White Plains address than the one listed in the first three exhibits.   Harrison Remand Decl., Exh. J (contemporaneous LinkedIn screenshot).   The parties fight over whether these exhibits are admissible at all.   *Compare* Remand Opposition at 15-16 (arguing that "the Court should disregard Plaintiff's declaration and all the exhibits" as inadmissible hearsay), *with* Remand Reply at 8-9 (arguing that the exhibits are admissible).   But even considering the exhibits, they fail to move the needle.

As an initial matter, the fact that a company publicly represents a location as its headquarters does not mean that the location is the company's nerve center or principal place of business.   As the Supreme Court has explained, a company's principal place of business is "typically," "normally," or "usually" its headquarters, but not necessarily so.   *Hertz*, 559 U.S. at 81, 92-93.   Nor does it matter that "the bulk of a company's business activities *visible to the public* take place in" one state if "its top officers direct those activities" in another.   *Id.* at 96 (emphasis added).   In other words, when it comes to a corporation publicly holding out its headquarters as being in one state, courts "must be a little more searching": they must ensure that the putative headquarters "is the actual center of direction, control, and coordination for the corporation." *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1175 (9th Cir. 2025) (internal quotation marks omitted).   What matters, then, is "where a corporation's officers direct, control, and coordinate the corporation's activities."   *Hertz*, 559 U.S. at 92-93.

On that score only Argus Inc. has produced evidence—and that evidence shows that it is more likely than not that, when this litigation began, its principal place of business was in Illinois.

19

LaChapelle 4/7/2023 Aff. ¶¶ 5-10 (explaining the basis for the assertion that "virtually all of Argus Inc.'s corporate control, authority, direction and decision-making occurs in and from TransUnion's corporate headquarters in Chicago").    Indeed, that evidence was sworn to by LaChapelle, TransUnion's officer, and "courts in the Second Circuit regularly find a corporate officer's sworn statement to be sufficient proof of a corporation's principal place of business."  *Kanowitz v. Broadridge Fin. Sols., Inc.*, No. 13 Civ. 649 (DRH) (AKT), 2014 WL 1338370, at *10 (E.D.N.Y. Mar. 31, 2014).  That is why courts have been unmoved by the fact that a party "advertises that it maintains its headquarters" to be in one state on its websites and LinkedIn page when the party's officer attests to facts showing that the locus of direction, control, and coordination is in another. *Charles v. Slade Indus., Inc.*, No. 19 Civ. 3013 (NGG), 2019 WL 6768659, at *1-2 (E.D.N.Y. Dec. 12, 2019).  Just so here.

Ultimately, despite Select's purported sources to the contrary, the only evidence actually produced bearing on the question of Argus Inc.'s nerve center "demonstrate[s], by a preponderance of the evidence," *id.* at *2, that its principal place of business at the time this action was brought and removed was in Illinois.  Simply put, Argus Inc. was a citizen of Illinois and Delaware, and Select was a citizen of New York.[4] Because there was complete diversity of citizenship at the relevant time, this Court has subject matter jurisdiction, and Select's motion to remand to state court for lack of subject matter jurisdiction is denied.  *See Schacht*, 524 U.S. at 388.  Nor, in light of the evidence actually presented, does the Court see a need to conduct further jurisdictional discovery, as Select requests in the alternative.  *See* Remand Motion at 11.

### III.  Motion to Dismiss: Personal Jurisdiction

Although this Court has subject matter jurisdiction over the action, Verisk and TUIH have

---

[4] As discussed at *infra* IV.B.1, Argus LLC no longer exists.  *See* Am. Compl. ¶ 30 (alleging that Argus LLC is "inactive" and has "merged out of existence" as of December 21, 2020).

moved to dismiss the claims against them for lack of personal jurisdiction. While the Court agrees that Select has not made the requisite showing of personal jurisdiction over TUIH, and thus grants TUIH's motion, it finds that jurisdictional discovery and, potentially, an evidentiary hearing are needed to resolve the question of personal jurisdiction over Verisk, and so stays Verisk's motion.

## A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a party, prior to filing an answer, to move to dismiss for lack of personal jurisdiction. "To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists. Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Okla. Firefighters Pension & Ret. Sys. v. Banco Santander (México) S.A. Institución de Banca Múltiple*, 92 F.4th 450, 455-56 (2d Cir. 2024) (citation modified). Although all allegations are "construed in the light most favorable to the plaintiff," *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993), a court need not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). But without holding an evidentiary hearing, a court must evaluate whether the plaintiff has, "through its pleadings and affidavits, made a *prima facie* showing of personal jurisdiction '*notwithstanding any controverting presentation* by'" the defendant. *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (emphasis added) (quoting *Marine Midland*

*Bank*, 664 F.2d at 904).  At that point, a court may either (1) decline "to hold a hearing, in which case" the defendant's motion to dismiss for lack of personal jurisdiction fails, although the defendant may still "challeng[e] the jurisdictional facts at trial"; or (2) "conduct an evidentiary hearing on the merits of the motion, in which case it would be [the plaintiff's] burden to establish jurisdiction by a preponderance of the evidence," should "either party request[] one."  *Id.* at 86-87.  In short, "a court may not 'discount' a plaintiff's allegations in favor of affidavits submitted by defendants 'without holding an evidentiary hearing or permitting jurisdictional discovery.'"  *Lively v. Wayfarer Studios, LLC*, No. 24 Civ. 10049 (LJL), 2025 WL 1952027, at *10 (S.D.N.Y. July 16, 2025) (quoting *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 113, 124 (2d Cir. 2021)).

**B.    Discussion**

In terms of personal jurisdiction, there is a "distinction between general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  A court's general jurisdiction "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  Specific jurisdiction, by contrast, "exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."  *Id.* (internal quotation marks omitted).  A "district court sitting in a diversity action such as this may exercise personal jurisdiction to the same extent as the courts" of "the state in which it sits," here New York.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

Under New York law, general jurisdiction is "proper when a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence

22

in New York is warranted." *Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 763 (S.D.N.Y. 2021) (internal quotation marks omitted).  General jurisdiction exists for a corporate entity if its contacts with New York "are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG*, 571 U.S. at 139 (citation modified).  A corporation may be "essentially at home" where it either "is incorporated or where it has its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler AG*, 571 U.S. at 139).  Those places are measured "at the time the initial complaint was filed." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674; *accord Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991).

The "specific-jurisdiction analysis proceeds in two steps." *Okla. Firefighters Pension & Ret. Sys.*, 92 F.4th at 456.  First, there must be a "statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  In evaluating this requirement, federal courts "look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997); *see also Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL 1895033, at *5 (S.D.N.Y. May 11, 2021).  Second, the court must determine whether the exercise of personal jurisdiction comports with due process. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-74 (1985); *Chloé*, 616 F.3d at 164.

Verisk and TUIH assert that Select has failed to make a *prima facie* showing as to both general and specific jurisdiction.  The Court takes each party in turn.

### 1. Verisk

While Plaintiff fails to make a *prima facie* showing that there is general jurisdiction over Verisk, the Court cannot make the same determination as to specific jurisdiction without jurisdictional discovery and potentially an evidentiary hearing.

### a. General Jurisdiction

The Amended Complaint alleges that there is general jurisdiction over Verisk because it "regularly transact[s] business in New York." Am. Compl. ¶ 37. But that Complaint also acknowledges that Verisk is incorporated in Delaware and has its principal place of business in New Jersey. *Id.* ¶ 36. And there are no allegations that this is a "truly exceptional case" where the "corporate defendant may be treated as essentially at home" beyond "where it is incorporated or maintains its principal place of business." *Brown*, 814 F.3d at 627 (internal quotation marks omitted). To the contrary, Verisk has produced testimony from a corporate executive swearing that it is not registered to do business in New York, and has no employees, offices, real property, telephone listings, or mailing addresses in the state. Wong Decl. ¶¶ 3-5. Verisk is not "essentially at home" in New York, so this Court cannot exercise general jurisdiction over it. *Daimler AG*, 571 U.S. at 139 (citation modified).

Fighting this conclusion, Select argues that this Court may "exercise general jurisdiction over Verisk based on its corporate relationship with Argus" Inc. Opposition to Verisk MTD at 3-9. But that argument is based on two flawed premises, either one of which would be enough to preclude exercising general jurisdiction over Verisk. First, this Court just explained that as of when this lawsuit began, Argus Inc. is incorporated in Delaware and has its principal place of business in Illinois, not New York. *Supra* II.B. *Contra* Opposition to Verisk MTD at 8-9 ("[T]he amended complaint alleges that Argus [Inc.] has a [principal] place of business in White Plains, New York, rendering it subject to the general jurisdiction of New York courts." (internal citation omitted)). Because "neither" Verisk nor Argus Inc. "is incorporated in New York," and neither "party maintain[s] its principal place of business in New York," there can be no general jurisdiction in New York based on Verisk's relationship to Argus Inc. *Fometal S.R.L. v. Keili Trading LLC*, No. 22 Civ. 1928 (KPF), 2024 WL 307976, at *7 (S.D.N.Y. Jan. 26, 2024). Second, and perhaps

24

more fundamentally, for the purposes of general jurisdiction, there is no relationship between Verisk and Argus Inc.  As the Second Circuit has explained, because "general jurisdiction is not related to the events giving rise to the suit," a plaintiff must "demonstrate the defendant's continuous and systematic general business contacts with the forum *at the time the initial complaint was filed*."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674 (emphasis added) (internal quotation marks omitted).  And when Select initially filed its state-court complaint on March 8, 2023, TUIH had already "acquired VFS (and, consequently, Argus[] Inc.) from Verisk."  Am. Compl. ¶ 33.  So even if Argus Inc. were to have its principal place of business in New York— which it does not—that would still not call for exercising general jurisdiction over Verisk, as the parties were no longer related by the time this suit was first brought.[5]  Personal jurisdiction over Verisk thus cannot be based on general jurisdiction.

### b.  Specific Jurisdiction

Unlike general jurisdiction, specific jurisdiction "requires courts to examine whether the cause of action arose out of the business transacted in New York or whether the tortious act occurred in New York," a "retroactive analysis in nature."  *Unterberg v. Mobil Shipping & Transp. Co.*, No. 14 Civ. 10025 (GBD), 2017 WL 4326040, at *3-4 (S.D.N.Y. 2017).  So Verisk's lack of New York presence and severed relationship with Argus Inc. at the time the lawsuit was filed are facts dispositive only for general-jurisdiction purposes.  *See id.*

Verisk challenges specific jurisdiction only on the grounds that Select falls short of a *prima facie* showing that New York's long-arm statute has been met, and not that applying the long-arm

---

[5] Because of these two fatal flaws, the Court need not decide whether Argus Inc. is "either an 'agent' or a 'mere department' of the foreign parent," *i.e.*, Verisk, for purposes of general jurisdiction.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).  *Compare* Verisk MTD at 9-10 (arguing that Select "makes no plausible allegations that Argus [Inc.] was an agent or mere department of Verisk"), *and* Verisk MTD Reply at 3-6 (same), *with* Opposition to Verisk MTD at 3-9 (arguing that "the amended complaint sufficiently alleges that Argus [Inc.] was Verisk's agent").

statute to Verisk would violate due process.  *See* Verisk MTD at 11 ("Plaintiff fails at the first step and the Court's inquiry should end [t]here.").  Select asserts that two provisions of New York's long-arm statute apply: Sections 302(a)(1) and 302(a)(2) of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R.").  Opposition to Verisk MTD at 9.  Under those provisions, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent" "transacts any business within the state or contracts anywhere to supply goods or services in the state," N.Y. C.P.L.R. § 302(a)(1), or "commits a [non-defamatory] tortious act within the state," *id.* § 302(a)(2).

**Section 302(a)(1).**  To establish specific jurisdiction under Section 302(a)(1), "two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).  As for the first requirement, courts look at the "totality of the defendant's activities within the forum to determine whether a defendant has transacted business in such a way that constitutes purposeful activity." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citation modified).  "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (internal quotation marks omitted).  As for the second, courts consider the degree to which there exists an "articulable nexus, or substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines*, 490 F.3d at 246 (internal quotation marks omitted).  This nexus need not be a "causal link between the defendant's New York business activity and a plaintiff's injury," but rather only "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir.

2013) (internal quotation marks omitted).  Ultimately, what matters is that the defendant's New York activities, no matter how limited, "were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988).

Select argues that Verisk transacted business in New York both directly and through an agent—Argus Inc.  *See* Opposition to Verisk MTD at 4-12.  In terms of Verisk's direct involvement, Select points to conduct undertaken by two individuals: Joshua Bedell and Vince McCarthy.  *See id.* at 6-7, 10-11 ("The amended complaint is full of allegations tying the conduct of Verisk employees (*e.g.*, Bedell and McCarthy) to Select's claims.").  The Amended Complaint alleges that Bedell was "Vice President of Corporate Development & Strategy for Verisk" and that McCarthy was "Verisk's Senior VP of Corporate Development and Strategy."  Am. Compl. ¶¶ 78, 188.  But according to the sworn declaration from Verisk's Assistant General Counsel and Corporate Secretary, neither Bedell nor McCarthy were ever Verisk employees, and instead were employed by "separate and distinct affiliated entities."  Wong Decl. ¶ 6.  The parties fight over whether Select's responsive evidence to this declaration is admissible and probative.  *Compare* Harrison MTD Decl., Exhs. A-D, *and* Sur-Reply to Verisk MTD at 3-6, *with* Verisk MTD Reply at 4-6, *and* Verisk Sur-Reply Response at 2-5.  In any event, Verisk's position—at bottom—is that it has "controvert[ed]" the Amended Complaint's allegations that "the individuals whose behavior allegedly subjects Verisk to personal jurisdiction actually worked for Verisk."  Verisk MTD Reply at 2, 6 (emphasis omitted).  Yet the Second Circuit has rejected "the principle that where a defendant rebuts a plaintiff's unsupported allegations with direct, highly specific testimonial evidence regarding a fact essential to jurisdiction—and the plaintiff does not counter that evidence—the allegation may be deemed refuted." *Dorchester Fin. Secs.*, 722 F.3d at 86 (internal quotation marks omitted).  Absent jurisdictional discovery and "an evidentiary hearing," the

question is whether Select has "through its pleadings and affidavits, made a *prima facie* showing of personal jurisdiction *notwithstanding any controverting presentation*" by Verisk. *Id.* (emphasis added) (internal quotation marks omitted). It has. So the Court cannot resolve this dispute, and in turn Verisk's motion to dismiss for lack of personal jurisdiction, without first allowing jurisdictional discovery and ultimately an evidentiary hearing. *See id.* at 86-87.

The same is true of Select's assertion that there is specific jurisdiction over Verisk through an agency relationship with Argus Inc. Opposition to Verisk MTD at 10-11. "Under New York law, a parent corporation may be subject to specific jurisdiction based on the actions of its subsidiary when the subsidiary acts as an agent of the parent." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14 Civ. 1568 (JPO), 2015 WL 5091170, at *6 (S.D.N.Y. Aug. 28, 2015). According to Select, the Amended Complaint "alleges that Verisk, largely through Bedell, exercised significant control over Argus [Inc.] with respect to its relationship with Select." Opposition to Verisk MTD at 10; *see also id.* at 6-7 (listing allegations purportedly "describ[ing] how Bedell . . . was intimately involved in Argus [Inc.'s] conduct, overseeing Argus [Inc.'s] participation in the joint venture as if he were an Argus [Inc.] executive himself"). And to bolster those allegations, Select has submitted a declaration from its Managing Partner, Christopher Steele. Steele MTD Decl.; *see also* Steele Sur-Reply Decl. (adding that he has "personal knowledge" of the facts in the declaration). That declaration includes additional facts supporting an agency relationship, such as "Verisk's involvement" in "changing specific contractual terms" between Select and Argus Inc., and a June 2017 presentation by Argus Inc. in which the company was referred to as a "Verisk Analytics Business" offering "a clear opportunity to create Verisk's next great contributory data set." Steele MTD Decl. ¶¶ 4, 7 (internal quotation marks omitted); Steele MTD Decl., Exh. B (presentation). Once more, at this stage, it is not this Court's place "to resolve" any "factual dispute" between the Amended Complaint and the Harrison and Steele

Declarations, on one hand, and the Wong Declaration on the other: the appropriate question is whether Select's "pleadings and affidavits" have "made a *prima facie* showing of personal jurisdiction notwithstanding any controverting presentation." *Dorchester Fin. Secs.*, 722 F.3d at 86 (internal quotation marks omitted).  Because they have, the Court cannot at this time hold that specific jurisdiction under N.Y. C.P.L.R. Section 302(a)(1) is lacking.

**Section 302(a)(2).**  Section 302(a)(2), for its part, "reaches only tortious acts performed by a defendant who was *physically present* in New York when he performed the wrongful act." *Bensusan Rest.*, 126 F.3d at 28 (emphasis added).  So "a defendant's physical presence in New York is a prerequisite to jurisdiction under" that provision.  *Bank Brussels Lambert*, 171 F.3d at 790.  Select argues that "[w]ith respect to [its] non-contractual claims," specific jurisdiction exists because of allegations "tying the conduct of Verisk employees (*e.g.*, Bedell and McCarthy) to Select's claims" and "regarding Verisk's exercise of control over Argus [Inc.], its agent." Opposition to Verisk MTD at 10-11.  As just explained, the Court cannot yet resolve those bases for specific jurisdiction.

The Court thus orders Select and Verisk to engage in expedited jurisdictional discovery, to be completed by April 17, 2026.  By that date, the parties shall file a proposed schedule for post-discovery supplemental briefing and indicate whether they request an evidentiary hearing.

### 2.  TUIH

Unlike with Verisk, the Court concludes that it lacks personal jurisdiction over TUIH.

#### a.  General Jurisdiction

As for general jurisdiction, TUIH is not incorporated in New York, nor does it have its principal place of business there.  Am. Compl. ¶ 34 (alleging that TUIH is incorporated in Delaware with its principal place of business in Illinois); Williams Decl. ¶ 3 ("TUIH was incorporated in Delaware on or around December 2, 2004").  Like with Verisk, TUIH has produced

sworn testimony that it is not licensed or registered to do business in New York, does not supply goods or services in New York, and does not have any employees, directors, operations, offices, property, or registered agents in the state. Williams Decl. ¶¶ 4-10. So TUIH is not "essentially at home in New York." *Daimler AG*, 571 U.S. at 139 (citation modified). And while TUIH, a "holding company," Williams Decl. ¶ 4, owns Argus Inc.—including at the time the lawsuit was initiated—there is no general jurisdiction over TUIH through that relationship because Argus Inc. itself neither is incorporated in nor has its principal place of business in New York, *see supra* II.B, III.B.1.a. "Even assuming *arguendo*" that Argus Inc.'s activities in New York "could be fully attributed to" TUIH, TUIH's "contacts with New York still fall well below the high level needed to place the corporation essentially at home in New York." *Fometal*, 2024 WL 307976, at \*7 (internal quotation marks omitted). So there is no general jurisdiction over TUIH.

### b. Specific Jurisdiction

As for specific jurisdiction, Select has failed to make its *prima facie* showing that *TUIH* has transacted business in New York in a way relating to the claims at issue. While Select points to allegations that after TUIH acquired Argus Inc. in April 2022, it (1) became bound by Argus Inc.'s contracts with Select and (2) collaborated with Nielsen, a New York company, which in turn developed the NIS Pro, Opposition to Argus/TUIH MTD at 18-21 (citing Am. Compl. ¶¶ 242-248, 276), those allegations "are too conclusory to make a *prima facie* showing of personal jurisdiction," *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018). *See* Argus/TUIH MTD Reply at 4 (arguing that Select's allegations are "conclusory" and "fall short" of what is required "for the Court to exercise specific jurisdiction"). Indeed, Select all but concedes the point, asserting that "[t]o the extent" the argument is "that TUIH is not the proper entity, Select should be permitted to amend the [Amended] Complaint to add the proper TransUnion entity as a defendant." Opposition to Argus/TUIH MTD at 15 n.3. The Court considers Select's motion for

leave to amend below, *infra* V, but concludes that the Amended Complaint should be dismissed as to TUIH for lack of personal jurisdiction.

### IV. Motion to Dismiss: Failure to State a Claim

With TUIH dismissed for lack of personal jurisdiction, and Verisk's personal-jurisdiction motion stayed pending jurisdictional discovery and, if appropriate, an evidentiary hearing, that leaves the Argus Defendants, who move to dismiss on the merits for failure to state a claim. The Court concludes that the Amended Complaint fails to state any claims against Argus LLC, and fails to state the specified claims against Argus Inc.

### A.      Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### B.      Discussion

The Court first explains why Select can state no claims against Argus LLC, before considering Argus Inc.'s arguments claim by claim.

31

### 1. Argus LLC

As an initial matter, Argus LLC argues that all of Select's claims against it must be dismissed because "[a]s a matter of New York law, Argus LLC no longer exists and therefore cannot be sued." Argus/TUIH MTD at 1, 8-9. The Court agrees.

Federal Rule of Civil Procedure 17(b)(3) provides that "a limited liability company's capacity to sue or be sued is governed by the law of the forum state—here, New York." *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15 Civ. 3997 (JMF), 2015 WL 6685523, at *6 (S.D.N.Y. Oct. 29, 2015) (citing Fed. R. Civ. P. 17(b)(3)). Under New York law, after an effective merger, "all . . . liabilities" of the "domestic limited liability companies and other business entities that have merged or consolidated" "shall be vested in the surviving or resulting domestic limited liability company or other business entity." N.Y. Ltd. Liab. Co. L. § 1004(a). Those liabilities "shall thenceforth attach to the surviving or resulting domestic limited liability company or other business entity and may be enforced against it to the same extent as if such debts, obligations, liabilities, penalties and duties had been incurred or contracted by it." *Id.* So "[i]t follows" that "a limited liability company that merges into another" entity "ceases to exist and that claims brought against that company should be dismissed." *MPEG LA*, 2015 WL 6685523, at *6.

Because Argus LLC has merged into Argus Inc., Select's claims against that nonexistent entity are dismissed with prejudice. *See id.* at *6-7 (dismissing claims against a merged entity that "ceased to exist" on the ground that it "is not an entity that can be sued"). Select does not dispute this conclusion, nor could it: the Amended Complaint itself alleges that Argus LLC is "inactive" and has "merged out of existence" as of December 21, 2020. Am. Compl. ¶ 30. Instead, any claims that could have been brought against Argus LLC are properly brought against Argus Inc., its "successor," *id.* ¶¶ 31-32. *See* N.Y. Ltd. Liab. Co. L. § 1004(a).

### 2.  Argus Inc.

Unlike its predecessor, Argus Inc. seeks dismissal of only some, but not all, of Select's claims.  Specifically, Argus Inc. moves to dismiss Select's non-contractual claims: Counts 2, 4, 5, 6, 10, 12, 13, 14, and 15.  Because Select fails to state those claims, the Court grants Argus Inc.'s partial motion to dismiss.

### a.  Count 2: Trade Secrets

Select's misappropriation of trade secrets claim fails as a matter of law.  "To state a claim for trade secret misappropriation under New York law, a plaintiff must adequately allege (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 181 (2d Cir. 2023) (internal quotation marks omitted).  In New York, "possession of a trade secret" is "generally evaluated with reference to six factors," namely:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* at 181 & n.2 (citation omitted).  And under New York law, "misappropriation claims cannot lie where they are simply a restatement of a breach of contract claim," as such claims "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14 Civ. 9687 (VEC), 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016) (internal quotation marks omitted).  That is, a misappropriation claim is "properly dismissed" when it is "'entirely based on alleged conduct that is proscribed by' contract." *Linkable Networks, Inc. v.*

*Mastercard Inc.*, 125 N.Y.S.3d 92, 93 (1st Dep't 2020) (quoting *Bancorp Servs.*, 2016 WL 4916969, at *9). And while New York law allows punitive damages for misappropriation of trade secrets, such a claim remains duplicative of a contract claim where the plaintiff alleges neither that the defendant's conduct "involve[d] a fraud evincing a high degree of moral turpitude," nor that such conduct was "aimed at the public generally, as is necessary to maintain a claim for punitive damage under New York law." *Indeck Energy Servs., Inc. v. Merced Cap., L.P.*, 159 N.Y.S.3d 405, 408-09 (1st Dep't 2021) (citing, *inter alia*, *Linkable Networks*, 125 N.Y.S.3d at 93).

According to the Amended Complaint, "SAMI is a trade secret of Select" that Argus Inc. wrongfully misappropriated. Am. Compl. ¶¶ 287, 290-291. The parties dispute whether Select has adequately alleged that SAMI was a trade secret under New York's six-factor standard. *Compare* Argus/TUIH MTD at 19-21 ("There are scant allegations to support the six factors courts consider in determining the existence of a trade secret, and the claim should therefore be dismissed."), *with* Opposition to Argus/TUIH MTD at 25-27 (pointing to "detailed allegations" as "more than sufficient to state a misappropriation of trade secrets claim"). The Court declines to resolve that dispute, as the "determination of whether particular information is a trade secret is typically a fact-intensive inquiry not amenable to resolution on a motion to dismiss." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 96 (S.D.N.Y. 2022).

Select's trade-secrets claim, however, still fails for another reason: it "fall[s] squarely within the allegations underlying the breach of contract claim[s]," and because "the same circumstances that would give rise to a breach would give rise to a tort for misappropriation of trade secrets," the misappropriation claim is "duplicative and must be dismissed." *BAE Sys. Info. & Elec. Sys. Integration Inc. v. L3Harris Cincinnati Elecs. Corp.*, 716 F. Supp. 3d 206, 227 (S.D.N.Y. 2024) (citation modified). Indeed, the Amended Complaint all but copies the same allegations from Count 1—for breach of contract of the BDA's intellectual-property provision—

34

into Count 2's misappropriation claim. *Compare* Am. Compl. ¶¶ 272-281 (alleging as a contract claim the fact that Argus Inc., "in breach of the BDA, wrongfully misappropriated SAMI and related confidential information for [its] own benefit"), *with id.* ¶¶ 282-292 (alleging as a misappropriation claim the fact that Argus Inc. "in breach of the BDA, wrongfully misappropriated SAMI and related confidential information for [its] own benefit"). Nor does Select argue that "its claim of misappropriation of trade secrets is not duplicative . . . because under New York law punitive damages are available on such a claim" or that Argus Inc.'s alleged conduct meets the standard "necessary to maintain a claim for punitive damage." *Indeck Energy Servs.*, 159 N.Y.S.3d at 409.

Instead, Select argues only that it "may plead claims in the alternative." Opposition to Argus/TUIH MTD at 27 (citing *Bancorp Servs.,* 2016 WL 4916969, at *10). But that argument is "unavailing," because "[w]hile courts have permitted alternative pleading where a contract's applicability is in dispute," Argus Inc. "does not dispute that an enforceable agreement applies to the conduct concerning" Select's misappropriation claim. *BAE Sys. Info.*, 716 F. Supp. 3d at 227 (citing *Bancorp Servs.*, 2016 WL 4916969, at *10); *see* Argus/TUIH MTD Reply at 8 ("There is no such dispute here, and thus no basis for alternative pleading."). "Courts in this Circuit routinely dismiss claims for misappropriation of trade secrets that duplicate a breach of contract claim because New York does not permit the same conduct to be assigned as both a breach of contract and a tort." *Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*, No. 24 Civ. 9305 (VM), 2025 WL 1827274, at *16 (S.D.N.Y. July 2, 2025) (collecting cases). Just so here. Select's misappropriation of trade secrets claim is thus dismissed with prejudice.

### b. Count 4: Tortious Interference with a Prospective Business Advantage (the Non-Predict Opportunities)

Argus Inc. correctly argues that Count 4—claiming tortious interference with prospective economic advantage relating to opportunities with entities other than Predict—is time-barred.

Under New York law, the "statute of limitations for a cause of action alleging tortious interference with precontractual relations and prospective economic advantage is three years." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 Civ. 704 (RPP), 2005 WL 1214281, at *15 (S.D.N.Y. May 20, 2005); *accord Morales v. Arrowood Indem. Co.*, 165 N.Y.S.3d 200, 205 (4th Dep't 2022); N.Y. C.P.L.R. § 214(4).  The three-year clock on such claims starts running "when the alleged interference first caused plaintiff to sustain damages, thereby establishing each of the tort's elements." *Red Mountain Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 176 (S.D.N.Y. 2021).

As Argus Inc. explains, and Select does not dispute, claims involving the MSG, Fox Studios, Riot Games, NBA, MLB, Aramark, and real-estate opportunities "expired well before [Select] filed its Original Complaint on March 7, 2023."  Argus/TUIH MTD at 17-18.  That is because the latest those opportunities were lost—and when Select's damages, if any, were first sustained—was in 2019, meaning that any tortious-interference claims based on those opportunities expired in 2022, before Select filed suit.  *Id.* (citing Am. Compl. ¶¶ 72, 74-78, 174-175, 198).  So Count 4 is dismissed with prejudice.

### c. Counts 5 and 6: Tortious Interference with Contract and Prospective Business Advantage (Predict)

As Argus Inc. points out, "[t]he only tortious interference claims that are not time-barred are the tortious interference with contract and prospective business advantage claims related to Predict."  Argus/TUIH MTD Reply at 6.  But both claims fail on their merits.

"Under New York law, a plaintiff claiming tortious interference with contract must plead (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 343 (2d Cir. 2024)

36

(internal quotation marks omitted).  To state a claim for tortious interference with a prospective

business advantage under New York law, "four conditions must be met: (1) the plaintiff had

business relations with a third party; (2) the defendant interfered with those business relations; (3)

the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4)

the defendant's acts injured the relationship."  *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,

547 F.3d 115, 132 (2d Cir. 2008) (mentioning this tort's other names).

Under either cause of action, the same "general rule" applies: "tortious interference claims

that are duplicative of contract claims are precluded."  *Honeywell Int'l Inc. v. Ecoer Inc.*, No. 24

Civ. 1464 (PAE), 2024 WL 3521591, at *5 (S.D.N.Y. July 23, 2024) (internal quotation marks

omitted).  Put differently, a "plaintiff may maintain both tort claims and contractual" claims "only

where an independent tort duty is present."  *POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F.

Supp. 3d 747, 760 (S.D.N.Y. 2021) (internal quotation marks omitted).  Select argues that the

allegedly "wrongful tortious conduct is independent of the legal duties Argus [Inc.] owed to Select

under the BDA and SOWs" because "Argus [Inc.'s] intentional, burdensome diligence

requirements for Predict to become a Product Partner had nothing to do with any contractual

responsibilities it had towards Select."  Opposition to Argus/TUIH MTD at 25.  But that argument

is belied by the Amended Complaint itself, which alleges that Argus Inc.'s "conduct concerning

the purported diligence necessary to qualify Predict as a Product Partner breached the terms of the

SOW[-]3."  Am. Compl. ¶ 354.  Indeed, Select's business relationship and contract with Predict

were premised on the Product Partner Strategy set forth in the SOW-3.  *See id.* ¶¶ 349-351, 354;

*cf. Horowitz v. Nat'l Gas & Elec., LLC*, No. 17 Civ. 7742 (JPO), 2018 WL 4572244, at *7

(S.D.N.Y. Sept. 24, 2018) (finding that a tortious-interference claim was not duplicative of a

contract claim where the defendant's allegedly tortious conduct occurred *before* the defendant

"assumed separate and independent contractual obligations" to the plaintiffs).  "In the absence of

37

additional allegations of distinct or additional duties beyond those in contract, a breach of contract is not actionable in tort." *DM Manager LLC v. Fidelity Nat'l Info. Servs., Inc.*, No. 23 Civ. 617 (ER), 2024 WL 1347724, at *5 (S.D.N.Y. Mar. 29, 2024). So Counts 5 and 6—claiming tortious interference with contract and prospective business advantage involving Predict—are both dismissed with prejudice.

### d. Count 10: Unjust Enrichment

The Court likewise concludes that Select's unjust-enrichment claim fails because that claim merely duplicates its surviving breach-of-contract claims. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Pauwels*, 83 F.4th at 186 (citation omitted). Under New York law, however, "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* at 187 (citation omitted). Put differently, "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract" claim. *In re 305 E. 61st St. Grp. LLC*, 130 F.4th 272, 282 (2d Cir. 2025) (citation modified). "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *Id.* (citation modified).

Select argues that its unjust-enrichment claim is not duplicative and can be pleaded in the alternative, but neither argument persuades. First, Select asserts that the unjust-enrichment claim "is based upon different facts and does not seek the same damages as its breach of contract claim." Opposition to Argus/TUIH MTD at 33. Not so: Select claims unjust enrichment based on revenue generated from the development of data and analytics products in the S&E sector and from entities introduced to Argus Inc. by Select, Am. Compl. ¶¶ 340-344, while simultaneously claiming that

38

Argus Inc. has "not compensated Select for business generated from the development of data and analytics products in the S&E sector and/or revenue received from persons or companies introduced by Select" in "breach of the BDA and [SOWs]," *id.* ¶ 301. Perhaps sensing this duplication, Select also asserts that plaintiffs may "plead unjust enrichment claims in the alternative." Opposition to Argus/TUIH MTD at 32-33. But "while it is true that a plaintiff may plead unjust enrichment . . . claims in the alternative if there is a dispute over the existence, scope, or enforceability of the putative contract, there is no such dispute here." *Goldberg v. Pace Univ.*, 88 F.4th 204, 214-15 (2d Cir. 2023) (citation modified); *see supra* IV.B.2.a. So Select's unjust-enrichment claim is dismissed with prejudice.

### e. Count 12: Breach of the Implied Covenant of Good Faith and Fair Dealing

For similar reasons, Select's good-faith-and-fair-dealing claim is dismissed. "Under New York law, a duty of good faith and fair dealing is implied in every contract, to the effect that neither party shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) (internal quotation marks omitted). Because "breach of that duty is merely a breach of the underlying contract," New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 704 F. Supp. 3d 473, 498 (S.D.N.Y. 2023) (internal quotation marks omitted). At the same time, the "implied covenant does not include any obligation inconsistent with the express terms of the contract" and "does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *Id.* (internal quotation marks omitted). So "to plead both a breach of contract claim and an implied covenant claim, a plaintiff must thread the needle of alleging an implied duty that is

39

consistent with the express contractual terms, but based on allegations that are distinct from the factual predicate for its contract claims." *Id.* at 499 (citation modified).

Select fails to thread that needle. As Select concedes, that Argus was "obligated to provide 'necessary data'"—the basis of the good-faith-and-fair-dealing claim—does "not create independent obligations beyond the contract." Opposition to Argus/TUIH MTD at 32. Indeed, Select cannot point to an implied duty consistent with the parties' contract but based on distinct factual allegations: as the Amended Complaint itself alleges, "under the BDA . . . Argus was obligated to provide the requisite data and analytics for all the revenue opportunities and for product development in a timely manner and in accordance with the BDA and SOW's schedules for client deliverables," and it was that "failure and/or refusal to provide the necessary data" on which the good-faith-and-fair-dealing claim is based. Am. Compl. ¶¶ 24, 360-362; *see* Argus/TUIH Opposition at 24 ("[Select's] implied covenant claim and at least three of its breach of contract claims (Counts 7, 8 and 9) relate to Argus [Inc.'s] alleged failure to contribute— including by providing the necessary data and services—to the development of the products the parties agreed to develop pursuant to the Agreements."). Because that claim "is not based on allegations different from those underlying the accompanying breach of contract claim," dismissal of the good-faith-and-fair-dealing claim "as duplicative is appropriate regardless of whether the breach of contract claim survives." *WCA Holdings III*, 704 F. Supp. 3d at 499 & n.19 (internal quotation marks omitted). So Select's good-faith-and-fair dealing claim is dismissed with prejudice.

### f.   Count 13: Gross Negligence

Once more, Select asserts a claim, this time in Count 13 for gross negligence, that must be dismissed as duplicative of its breach of contract claims. "Under New York law, a claim for gross negligence requires establishing four elements: (1) the existence of a duty owed by the defendant

to the plaintiff; (2) [the] defendant's breach of that duty; (3) injury to the plaintiff caused by the defendant's breach; and (4) conduct by the defendant that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Hadami*, 272 F. Supp. 3d at 601 (internal quotation marks omitted). "The duty giving rise to a gross negligence claim must be independent of the duty arising from a contract." *Id.* (citation modified).

The Amended Complaint expressly alleges that Argus Inc. "breached it duties to Select when, through its recklessness and gross negligence[,] . . . [it] failed to meet its contractual obligations to Select," and that Argus Inc. "recklessly and intentionally disregarded" its "contractual obligations to Select." Am. Compl. ¶¶ 369-370. While Select points to a purportedly "independent duty" that Argus Inc. owed "to perform in a professional manner, in accordance with industry standards," Opposition to Argus/TUIH MTD at 34 (citing Am. Compl. ¶¶ 365-368), one of its breach-of-contract claims is based on the fact that the "BDA specifically required the parties to perform their respective services under the BDA ███████████████████████ ████████████████ Am. Compl. ¶¶ 323, 325. Because "claims based on negligent or grossly negligent performance of a contract are not cognizable," *Hadami*, 272 F. Supp. 3d at 601 (citation omitted), Select's gross-negligence claim is dismissed with prejudice, too.

### g. Counts 14 and 15: Fraud in the Inducement

Finally, the Court agrees with Argus Inc. that Select's "fraud in the inducement claims fail to meet the heightened pleading standard under Fed. R. Civ. P. 9(b)." Argus/TUIH MTD at 21-23. To state a claim for fraudulent inducement under New York law, the plaintiff "must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011). "In addition, the plaintiff must allege specific facts as to the fraud, including the misleading statements, speaker, time, place,

41

individuals involved, and specific conduct at issue." *Id.* (citing Fed. R. Civ. P. 9(b)).  Usually, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract," so "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (citation modified).  But "[u]nder New York law, a fraudulent inducement claim is independent of a related claim of breach of contract if it alleges misrepresentations of present fact, not merely misrepresentations of future intent to perform under the contract, and the alleged breach of duty is separate from or in addition to the contract duty." *A Star Grp., Inc. v. Northland Energy Trading, LLC*, No. 21-797, 2023 WL 8613525 (2d Cir. 2023) (summary order) (citation modified).

In Count 14, Select alleges as material misrepresentations of existing fact statements made by Argus Inc., "through Banerjee and Bonalle-Hannan," who "repeatedly represented that Argus only cared about top line revenue and not profit" "[i]n connection with the negotiations leading up to SOW[-]2." Am. Compl. ¶¶ 374-378; *see also id.* ¶¶ 55-59.  But allegations that these individuals made misrepresentations "'throughout the negotiations' are insufficiently specific about when the statements were made and therefore do not contain the particularity necessary to state a fraud claim in federal court and under New York law." *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 462 (S.D.N.Y. 2021) (collecting cases).  "The allegations also do not specify where or how the statements were made." *Id.*  The Court thus finds that Count 14 falls short of Rule 9(b)'s heightened pleading standard for fraud claims.  And "[w]hile dismissal under Rule 9(b) is almost always accompanied by a grant of leave to amend, such leave is not necessary if the claimant has had a prior opportunity to amend its complaint." *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 145 (S.D.N.Y. 2019) (internal quotation marks omitted).  Select has already amended its complaint once and, despite filing a proposed Second Amended Complaint, has not "requested opportunity to amend" this fraud claim further, *id.*, so the Court dismisses Count 14

42

with prejudice.

As for Count 15, Select alleges as false and material misrepresentations of existing fact statements made by "Argus [Inc.]" that "in connection with SAMI" it "could provide certain and valuable granular information to Select, including insights and benchmarking data revealing the spending habits of audience attendees against defined sponsors or target sponsors." Am. Compl. ¶¶ 380-385. In its brief, Select explains that this allegation refers to representations made by Bonalle-Hannan and Taylor (Argus Inc.'s Vice President of Data Analytics) "in or around May 2018 regarding Argus [Inc.'s] ability to design and deliver the SAMI product, including ███████ ████████████████████████████████ Opposition to Argus/TUIH MTD at 28-29 (citing Am. Compl. ¶¶ 82, 87, 89-91). But the paragraphs of the Amended Complaint that Select cites in support of that explanation are inapposite. The allegation about statements made in May 2018 concern those *by Select*, not Argus Inc. or its employees. Am. Compl. ¶ 87 (alleging that "[i]n May 2018" "Select shared this stand-alone product of sponsorship insights deck with potential customers, including the Mets, for use with 'sponsorship/marketing' campaigns'"). And specific statements allegedly made by Bonalle-Hannan and Taylor—on August 8, 2018, not May 2018— do not appear to claim that Argus could provide granular information on spending habits. *See id.* ¶ 89 (alleging that after Select reported to Argus that the Mets wanted to discuss testing SAMI, Bonalle-Hannan responded by saying "Fantastic—this (as a standalone) is something we can deliver without any media partner—and very quickly, and on an ongoing basis . . . Should be a near in revenue opportunity"); *id.* ¶ 90 (alleging that Taylor said "[t]his is something we have the framework built for already . . . just need to tweak it and could execute fairly quickly, especially if Mets are engaged in framing what they need"). Select "fails to state how or why these" particular "statements were false or misleading, *i.e.*, the underlying facts that made what [Bonalle-Hannan and Taylor] said untrue." *Cambridge Cap.*, 565 F. Supp. 3d at 462-63. So Count 15, too, falls

43

short of the Rule 9(b) heightened pleading standard.  "Because the Court dismisses the fraud claim on [Rule 9(b)] grounds, the Court need not reach the issue of whether the fraud claim is duplicative." *Exceed Talent Cap., LLC v. Durk Derrick Banks*, No. 23 Civ. 10647 (GHW), 2025 WL 444902, at *2-3 (S.D.N.Y. Feb. 10, 2025); *see* Argus/TUIH MTD Reply at 8-9 ("Count 15 is merely a breach of contract claim dressed up as fraud, and should therefore be dismissed.").  Like Count 14, Count 15 is dismissed with prejudice.

* * *

As the above discussion makes clear, this case, at heart, is one for breach of contract.  The Court thus dismisses the non-contract claims—Counts 2, 4, 5, 6, 10, 12, 13, 14, and 15—against Argus Inc. with prejudice.

One final point: "without first determining that it has . . . personal jurisdiction" over Verisk, the Court would ordinarily be unable to "rule on the merits" of its motion to dismiss.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007); *accord Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012) ("Ordinarily, we would address any challenge to personal jurisdiction prior to deciding the merits of the cause of action.").  But "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l*, 549 U.S. at 431 (internal quotation marks omitted).  And "in cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction— in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action," courts "may address first the facial challenge to the underlying cause of action and, if [it] dismiss[es] the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants." *Naranjo*, 667 F.3d at 246 n.17.  To streamline jurisdictional discovery and next steps in this litigation, by March 20, 2026, Select and Verisk shall simultaneously file letter briefs of no more than ten pages identifying (1) threshold grounds, if any, on which this Court can resolve

44

certain of Select's claims and (2) specific claims dismissed as to Argus Inc. that should also be dismissed as to Verisk, in light of the above discussion.

### V.  Motion for Leave to Amend

As mentioned, after the parties briefed the various motions to dismiss, Select filed a motion for leave to amend the Amended Complaint.  According to Select, the proposed Second Amended Complaint seeks "to substitute TransUnion LLC and TransUnion (together 'TransUnion')" for TUIH.  Motion to Amend at 1.  The Court denies Select's motion for leave to amend.

### A.      Legal Standard

Under the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

### B.      Discussion

The proposed Second Amended Complaint asserts five causes of action against TransUnion:

- Breach of Contract—of the intellectual-property provision of the BDA—against all Defendants ("Count 1"), Proposed Second Am. Compl. ¶¶ 272-282;

- Misappropriation of Trade Secrets against all Defendants ("Count 2"), *id.* ¶¶ 283-293;

- Breach of Contract—of the revenue-sharing provisions of the BDA and Statements of Work—against all Defendants ("Count 3"), *id.* ¶¶ 294-302;

- Tortious Interference with a Prospective Business Advantage—including the MSG, Fox Studios, Riot Games, NBA, MLB, Aramark, and real-estate opportunities—against all Defendants ("Count 4"), *id.* ¶¶ 303-308; and

- Unjust Enrichment against all Defendants ("Count 10"), *id.* ¶¶ 340-347.

The Court agrees that all five claims are futile and thus denies Select's motion for leave to amend on those grounds.

As an initial matter, Select asserts that "current defendants" like Argus Inc. "do not have standing to assert claims of futility on behalf of proposed defendants," like TransUnion.  Motion to Amend at 8 (quoting *O'Gorman v. Mercer Kitchen L.L.C.*, No. 20 Civ. 1404 (LJL), 2021 WL 602987, at *2 (S.D.N.Y. Feb. 16, 2021)).  That may be true as a "general" matter, *O'Gorman*, 2021 WL 602987, at *2 (internal quotation marks omitted), but it is "not necessary for the Court to decide whether [Argus Inc.] has standing to oppose the motion" to amend because "[e]ven in the absence of an opposition, . . . the Court must consider whether the proposed amendment is futile or unduly delayed," *Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 121 (JPO), 2016 WL 1255739, at *3 n.2 (S.D.N.Y. Mar. 30, 2016).  This makes sense as a matter of "judicial efficiency," especially "where it may be clear on the face of the pleadings that the proposed amendment is patently futile." *Tapjets Inc. v. Utd. Payment Servs., Inc.*, No. 19 Civ. 3740 (RRM) (VMS), 2021 WL 3129886, at *6 (E.D.N.Y. July 22, 2021).  Just so here: consider, for example, Count 4 of the proposed Second Amended Complaint, which raises the same tortious interference with a prospective business advantage claim that this Court held was time-barred as to Argus Inc. *See supra* IV.B.2.b.  The exact same is true of the claim as to TransUnion, such that it is futile.

The other proposed claims fare no better.[6]

_____

[6] Argus Inc. argues that the proposed Second Amended Complaint should be rejected out of hand because it fails to allege TransUnion LLC's members as required for purposes of diversity jurisdiction.  Motion to Amend Opposition at 12-14 ("[T]he Court should not permit Plaintiff to file an amended complaint that is dead on arrival—and must immediately be dismissed—because Plaintiff fails to plead subject matter jurisdiction.").  The Court declines to take that path, because

### 1. Counts 1 and 3: Breach of Contract

The proposed Second Amended Complaint's breach-of-contract claims against TransUnion are futile. Count 1 alleges that TransUnion "wrongfully misappropriated SAMI" in "breach of the BDA," to which TransUnion was purportedly "bound" "through its April 18, 2022 acquisition of Argus [Inc.]." Proposed Second Am. Compl. ¶¶ 277, 280. Count 3 similarly alleges that TransUnion has "not compensated Select for business generated from the development of data and analytics products in the S&E sector and/or revenue received from persons or companies introduced by Select" in "breach of the BDA and [SOWs]." *Id.* ¶ 302.

The problem for Select is that TransUnion was not a party to any of those agreements. "Clearly a breach can only occur when one is under an obligation to perform in the first instance," meaning that where a defendant "was not a named party to the Agreement . . . , as a matter of law, [it] cannot be held accountable for the alleged breach." *Stratton Grp., Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978) ("Before defendant may be held accountable for the breach of a contract, it must be demonstrated that he was a party thereto."); *accord Victory State Bank v. EMBA Hylan, LLC*, 95 N.Y.S.3d 97, 101 (2d Dep't 2019) ("One cannot be held liable under a contract to which he or she is not a party."). In light of this settled law, Select fails to elaborate on how TransUnion can be liable for breach of contract beyond its conclusory allegation that "the terms" of the BDA "bind TransUnion as a result of its April 18, 2022 acquisition of Argus [Inc.]."

---

"[a]lthough a plaintiff premising federal jurisdiction on diversity of citizenship is required to include in its complaint adequate allegations to show that the district court has subject matter jurisdiction, its failure to do so does not always require that the action be dismissed, for the actual *existence* of diversity jurisdiction, *ab initio*, does not depend on the complaint's compliance with these procedural requirements." *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) (citation modified). Because courts "may simply deem the pleadings amended so as to properly allege diversity jurisdiction" when "the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship," *id.* (internal quotation marks omitted), it would be more efficient to explain why the proposed Second Amended Complaint's claims against TransUnion are futile now rather than later, presumably after Select would try to supplement the record or re-file its proposed complaint.

47

Motion to Amend Reply at 11 (citing Proposed Second. Am. Compl. ¶¶ 33, 277); *see R&D Elecs., Inc. v. NYP Mgmt., Co.*, 78 N.Y.S.3d 834, 836 (4th Dep't 2018) (explaining that "[i]n general, a corporation that acquires another corporation's assets is not liable for its predecessor's contract liabilities" and noting exceptions which are not argued by Select here (internal quotation marks omitted)).  So Counts 1 and 3 are futile.

### 2.  Counts 2 and 10: Misappropriation of Trade Secrets and Unjust Enrichment

The Court further agrees that the proposed Second Amended Complaint's trade-secrets and unjust-enrichment claims are futile because the proposed complaint "fails to allege any specific conduct by TransUnion," as opposed to Argus Inc. or other entities, supporting those claims. Opposition to Motion to Amend at 17.

As for the unjust-enrichment claim, Select alleges that TransUnion has "not compensated Select for business generated from the development of data and analytics products in the S&E sector and/or revenue received from persons or companies introduced by Select" even though "*Argus [Inc.]* partnered with Nielsen to develop data and analytics products in the S&E sector" and "*Argus [Inc.] and/or Nielsen* have entered into agreements with entities that were introduced to Argus [Inc.] by Select."  Proposed Second Am. Compl. ¶¶ 342-343, 345 (emphases added).  In other words, Select seeks to hold TransUnion liable under a theory of unjust enrichment for Argus Inc.'s actions.  But "[it] is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary."  *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014).  And while "[u]nder New York law" a parent "*can* be held liable for the actions of a subsidiary where a plaintiff shows" that "the parent corporation dominates the subsidiary in such a way as to make it a 'mere instrumentality' of the parent," *id.*, all Select alleges here is that "TransUnion oversaw all decisions related to Argus [Inc.] and its strategic decision-

making" and that post-acquisition "TransUnion exercised complete control and decision-making authority regarding all aspects of Argus [Inc.'s] business," Proposed Second Am. Compl. ¶¶ 247, 278.  Such "conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss," *Kaplan Grp. Investments LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374, 386 (S.D.N.Y. 2023) (internal quotation marks omitted), so the proposed unjust-enrichment claim is futile.

The same is true of the proposed misappropriation cause of action, which claims that TransUnion "wrongfully misappropriated SAMI and related confidential information," including "by transferring SAMI and all related business contacts and strategies developed by Select to Nielsen." Proposed Second Am. Compl. ¶¶ 291-292.  The only allegation other than TransUnion's purported control over Argus that Select points to is that on January 17, 2024, "Nielsen announced a collaboration with TransUnion, confirming the union between the companies, promoting the same products being developed by Select and Argus just a few years earlier."  Motion to Amend Reply at 10 (quoting Proposed Second Am. Compl. ¶ 248).  But that "cooperative effort" was not alleged to have been about the NIS or NIS Pro, which purportedly relied on SAMI.  *Compare* Proposed Second Am. Compl. ¶ 248, *with id.* ¶ 243 ("On May 31, 2022, after TransUnion acquired VFS and Argus [Inc.], Nielsen announced the expansion of its purportedly new product into [the NIS Pro].").  So Select cannot rely on conclusory allegations of TransUnion's control of Argus Inc. or allegations of TransUnion's general involvement with Nielsen to support its misappropriation claim.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).  That claim, too, is thus futile.

\* \* \*

Because the Court finds that the proposed Second Amended Complaint's claims against TransUnion are futile, it denies Select's motion for leave to amend.

## VI.  Motion to Seal

Finally, in its oppositions to Defendants' motion to dismiss Select "seeks to include information which was previously redacted"; it thus moves to file unredacted versions of its papers under seal and redacted versions publicly.  Dkts. 102-104.  Indeed, this Court has previously allowed Select to redact portions of the original Complaint, Amended Complaint, and proposed Second Amended Complaint.  Dkts. 36, 56, 135.  For the reasons already recognized by the Court, the requested sealing of Select's opposition briefs is appropriate.  As Select has already filed the full unredacted submissions under seal but has not yet filed the partially redacted versions on the public docket, it shall do so by March 13, 2026.

## VII.  Conclusion

For the above reasons, the Court denies Select's motion to remand, grants TUIH's motion to dismiss for lack of personal jurisdiction, grants Argus LLC's motion to dismiss for failure to state any claims, grants Argus Inc.'s motion to dismiss for failure to state Select's non-contractual claims, and denies Select's motion for leave to file an amended complaint.  Select's motions to seal are granted.  Thus, all Counts against Argus LLC are dismissed with prejudice, all Counts against TUIH are dismissed without prejudice, and Counts 2, 4, 5, 6, 10, 12, 13, 14, and 15 are dismissed with prejudice as to Argus Inc.

The Court, however, stays Verisk's motion to dismiss for lack of personal jurisdiction pending jurisdictional discovery and, if necessary, an evidentiary hearing.  Select and Verisk shall engage in expedited jurisdictional discovery to be completed by April 17, 2026.  By that date, Select and Verisk shall file a proposed schedule for post-discovery supplemental briefing and indicate whether they request an evidentiary hearing.  In the meantime, Select and Verisk shall

also file simultaneous letter briefs by March 20, 2026 identifying (1) threshold grounds, if any, on which this Court can resolve certain of Select's claims and (2) specific claims dismissed as to Argus Inc. that should also be dismissed as to Verisk consistent with the analyses above, notwithstanding this Court's current inability to resolve Verisk's personal-jurisdiction motion.

The Clerk of Court is respectfully directed to close Docket Numbers 73, 90, 93, 102, 103, 104, and 139, and to terminate from the docket Defendants Argus Information and Advisory Services, LLC and TransUnion Intermediate Holdings, Inc.

This Opinion and Order shall initially be filed under seal. The parties shall have until March 13, 2026 to file any proposed redactions to this Opinion and Order, as well as a letter justifying why those redactions are justified under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). The parties shall submit a single set of proposed redactions but may explain any disagreements in their joint letter. By that same date, Select shall file the partially redacted versions of its opposition briefs on the public docket.

     SO ORDERED.

Dated: March 6, 2026
      New York, New York

                          JOHN P. CRONAN
                  United States District Judge