UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| STERLING SELECT II ADVISORY, LLC,<br><br>Plaintiff,<br><br>-v-<br><br>ARGUS INFORMATION AND ADVISORY SERVICES, INC. *et al.*,<br><br>Defendants. | : | 23 Civ. 2939 (JPC)<br><br>OPINION AND ORDER |

JOHN P. CRONAN, United States District Judge:

Before the Court are follow-ons from its Opinion and Order issued on March 6, 2026 (the "Omnibus Opinion"), which resolved a flurry of motions filed by the parties. *See Sterling Select II Advisory, LLC v. Argus Info. & Advisory Servs., Inc.*, No. 23 Civ. 2939 (JPC), 2026 WL 734047 (S.D.N.Y. Mar. 6, 2026).[1] For the reasons that follow, the Court denies Select's motion to reconsider the Omnibus Opinion, and dismisses with prejudice Counts Four, Twelve, and Fifteen against Verisk.

## I. Background

The Court assumes familiarity with this case's background. *See id.* at *1-7. On March 6, 2026, this Court resolved a handful of pending motions: it (1) denied Select's motion to remand the case to state court for lack of subject matter jurisdiction, *id.* at *7-10; (2) stayed Verisk's motion to dismiss for lack of personal jurisdiction pending jurisdictional discovery and, if necessary, an evidentiary hearing, *id.* at *11-14; (3) granted TUIH's motion to dismiss for lack of personal jurisdiction, *id.* at *14; (4) granted Argus LLC's motion to dismiss Select's Amended Complaint

[1] For brevity's sake, the Court uses the terms and definitions laid out in the Omnibus Opinion.

for failure to state any claims against that entity, *id.* at *15; (5) granted Argus Inc.'s motion to dismiss the non-contractual claims against that entity, *id.* at *16-21; and (6) denied Select's motion for leave to file an amended complaint to substitute TransUnion LLC and TransUnion (together, "TransUnion") for TUIH, *id.* at *21-24. The Court also granted Select's motion to file unredacted versions of its papers under seal and redacted versions publicly. *Id.* at *24.

A few aspects of the Court's prior ruling bear further mention for purposes of this writing. On the merits of Argus Inc.'s motion to dismiss, the Court dismissed with prejudice Select's trade-secrets claim (Count Two) because it was "duplicative" of Select's breach-of-contract claim and Select had failure to argue that "its claim of misappropriation of trade secrets is not duplicative because under New York law punitive damages are available on such a claim or that Argus Inc.'s alleged conduct meets the standard necessary to maintain a claim for punitive damage." *Id.* at *17 (citation modified). The Court similarly dismissed with prejudice Select's claims of tortious interference with contract and prospective business advantage involving Predict (Counts Five and Six) for being "duplicative" of Select's contract claims, because Select's argument to the contrary—that "Argus Inc.'s intentional burdensome diligence requirements for Predict to become a Product Partner had nothing to do with any contractual responsibilities it had towards Select"—was "belied by the Amended Complaint itself, which alleges that Argus Inc.'s conduct concerning the purported diligence necessary to qualify Predict as a Product Partner breached the terms of the SOW-3." *Id.* at *18 (citation modified). The Court further agreed with Argus Inc. that Select's fraudulent-inducement claims (Counts Fourteen and Fifteen) "fail[ed] to meet the heightened pleading standard under" Federal Rule of Civil Procedure 9(b). *Id.* at *20-21 (internal quotation marks omitted). And the Court recognized that "while dismissal under Rule 9(b) is almost always accompanied by a grant of leave to amend," Select had "not requested opportunity to amend" these fraud claims further, *id.* at *20 (citation modified), so it dismissed them with prejudice, too, *id.* at

*20-21.

The Court concluded its discussion on the merits by explaining that "without first determining that it has personal jurisdiction over Verisk," it "would ordinarily be unable to rule on the merits" of Verisk's motion to dismiss for failure to state a claim. *Id.* at *21 (citation modified). But the Court observed that federal courts may both "choose among threshold grounds for denying audience to a case on the merits" and "address first the facial challenge to the underlying cause of action" made by "all defendants" "over some of whom the court indisputably has personal jurisdiction" without "address[ing] the personal jurisdiction claims made by some defendants." *Id.* (citation modified). So the Court ordered Select and Verisk to "simultaneously file letter briefs of no more than ten pages identifying (1) threshold grounds, if any, on which this Court can resolve certain of Select's claims and (2) specific claims dismissed as to Argus Inc. that should also be dismissed as to Verisk, in light of the above discussion," by March 20, 2026. *Id.*

On March 20, 2026, Select and Verisk filed those letter briefs addressing the Court's ability to resolve certain claims without ruling on the personal-jurisdiction question. Dkts. 171 ("Select Threshold Br."), 173 ("Verisk Threshold Br."). That same day, Select moved for this Court to reconsider its Omnibus Opinion under Local Civil Rule 6.3. Dkts. 167, 168 ("Reconsideration Motion"), 170 ("Reconsideration Motion, Exh. A"). On March 25, 2026, the Court set a briefing schedule on the reconsideration motion. Dkt. 176. Consistent with that briefing schedule, Argus Inc. filed its opposition on April 3, 2026, Dkt. 180 ("Reconsideration Opposition"), and Select replied on April 10, 2026, Dkt. 181 ("Reconsideration Reply").

In the March 6, 2026 Omnibus Opinion, the Court also ordered Select and Verisk to complete expedited jurisdictional discovery by April 17, 2026, and to "file a proposed schedule for post-discovery supplemental briefing" by that same date. *Sterling Select II Advisory*, 2026 WL 734047, at *14. On April 17, 2026, the parties proposed that briefing schedule, Dkt. 182, which

the Court approved on April 20, 2026, Dkt. 184. Per the approved briefing schedule, Select filed its opening brief on May 19, 2026. Dkts. 192, 194-196. Verisk filed its opposition brief on June 11, 2026. Dkt. 198. Select replied on June 25, 2026. Dkts. 199, 201-203.

Meanwhile, Argus Inc. filed an Answer to the Amended Complaint on March 20, 2026. Dkt. 165. The Answer raises three counterclaims, the first two dealing with a legal-fees provision in the BDA, and the third concerning a breach of the parties' Services Agreement seeking $250,000.00 in compensation. *Id.* at 73-75 ¶¶ 24-42. Select replied to Argus Inc.'s counterclaims on April 17, 2026. Dkt. 183. On April 20, 2026, Select moved to reopen discovery—which had closed on April 17, 2026, *see* Dkt. 155—in light of Argus Inc.'s counterclaims. Dkt. 185. Argus Inc. responded to that motion on April 22, 2026. Dkt. 186. That same day, Select replied to Argus Inc.'s response. Dkt. 187.

On July 20, 2026, this Court held a status conference to discuss Verisk's motion to dismiss for lack of personal jurisdiction and Select's motion for a limited reopening of discovery. At that conference, the Court ruled that it would hold an evidentiary hearing on the personal-jurisdiction issue and directed Select and Verisk to advise the Court as to their availability for that hearing. *See* Minute Entry, July 20, 2026; Dkt. 204 (granting Select's motion to reopen discovery until October 19, 2026). Remaining before the Court, then, are Select's motion to reconsider the Court's March 6, 2026 Omnibus Opinion and Verisk's motion to dismiss on permissible non-jurisdictional grounds. The Court takes each in turn.

## II. Reconsideration Motion

Select quarrels with this Court's decision to dismiss with prejudice its claims against Argus Inc. for misappropriation of trade secrets, tortious interference relating to Predict, and fraudulent inducement. Its quarrel with those dismissals fails to meet the high bar for reconsideration.

**A. Legal Standard**

Motions for reconsideration in this District are governed by Local Civil Rule 6.3, which requires the movant to "set[] forth concisely the matters or controlling decisions which the moving party believes the Court has overlooked." S.D.N.Y. Loc. Civ. R. 6.3. The standard for granting reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted); *see Shrader*, 70 F.3d at 257 ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

**B. Discussion**

Select argues that by dismissing certain of its claims with prejudice and thus "denying" Select "the opportunity to amend" those claims, this Court committed "clear" and "reversible error." Reconsideration Motion at 7. Not so. As Argus Inc. points out, and Select does not dispute, Select "did not request leave to amend" its trade-secrets, fraudulent-inducement, and tortious-interference claims. Reconsideration Opposition at 7 & n.10. "While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' no court can be said to have erred in failing to grant a request that was not made. As a result, the contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (citation modified) (quoting Fed. R. Civ. P. 15(a)). That holds true even when dismissing fraud claims for falling short of Rule 9(b)'s heightened pleading standard; "while dismissal under Rule 9(b) is almost always accompanied by a grant of leave to

amend," *Sterling Select II Advisory*, 2026 WL 734047, at *20 (citation modified), the Second Circuit has noted that district courts are "not obliged to grant plaintiffs leave to amend their complaint," even "in the case of a Rule 9(b) dismissal," when "leave to amend has not been sought," *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) (internal quotation marks omitted). Here, Select "made no attempt to seek leave to amend" its claims "before . . . the . . . court's decision," nor—even if it had sought leave—did it make before that decision "any showing as to how [it] might amend [its] complaint" as to those claims." *Id.*; *accord Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 218 (2d Cir. 2010) (summary order) (similarly affirming a district court's decision not to grant leave to amend a fraud claim where the plaintiffs had not requested leave to amend, and even if they had, they gave "no explanation of what they would allege in an amended complaint to save their claims").

Select was perfectly capable of requesting leave to amend. In fact, in its brief in opposition to Argus Inc.'s motion to dismiss, it expressly requested that it "be permitted to amend the Complaint to add the proper TransUnion entity as a defendant," Dkt. 106 at 15 n.3, and then submitted a proposed amended complaint that it sought leave to file once the motion-to-dismiss briefing was completed, Dkt. 140-1; *see* Dkts. 139-141 (motion-to-amend papers). *See* Reconsideration Reply at 7 ("The purpose of that amendment was solely to replace a misnamed Defendant."). That proposed amendment would have entailed only replacing TransUnion for TUIH. *Compare* Dkt. 140-1 *with* Am. Compl. By contrast, Select said nary a word about amending any of its claims against Argus Inc. "[D]enial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107-08 (2d Cir. 2022) (internal quotation marks omitted); *accord Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025). Because the only amendment Select sought was to substitute a party rather than further flesh out its claims, the Court necessarily committed

no error by declining to *sua sponte* grant Select leave to amend those claims. *See Gallop*, 642 F.3d at 369; *Anatian*, 193 F.3d at 89; *Campo*, 371 F. App'x at 218.

Select argues that it "has given numerous examples of new allegations it would bring for the dismissed claims." Reconsideration Reply at 6 (citing Reconsideration Motion at 8-10). But that argument fails. For one, Select only gave those examples *after* the Court decided not to grant leave to amend that Select never sought. *See* Reconsideration Motion, Exh. A; *id.*, Exhs. B-F. So Select cannot belatedly manufacture any error. *Cf. Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 24-25 (2d Cir. 2017) (summary order) (finding that a district court erred where the *pro se* plaintiff, "in his papers opposing the motion to dismiss, had expressly asked to be allowed to replead in the event of an adverse ruling"); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 169, 190-91 (2d Cir. 2015) (similar, where in opposing a motion to dismiss "Plaintiffs also requested leave, in the alternative, to amend the complaint"). For another, and relatedly, at least some of these purportedly "new" allegations had long been available to Select, *see* Reconsideration Motion at 12 n.2 (citing as evidence of fraud an email "sent . . . to Select" on October 16, 2019), and even for allegations revealed only in discovery, Select could have requested leave to amend after the motion-to-dismiss briefing was complete and before the Court decided that motion—as it did to substitute certain defendants—but did not, *see* Reconsideration Opposition at 4 (representing that "[o]n December 12[, 2025], Plaintiff sent Defendant a letter stating that Plaintiff intended to seek leave to amend because of the contents of several produced documents"). Select accounts for none of this, nor could it: the logical import of its position is that courts must always grant leave to amend even where it is not requested. *But see Gallop*, 642 F.3d at 369; *Anatian*, 193 F.3d at 89; *Campo*, 371 F. App'x at 218. Because that is not the law in the Second Circuit, the Court did not err, let alone clearly. *See, e.g.*, *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) ("[W]e see no abuse of discretion in the district court's failure to

grant leave to replead *sua sponte*.").

Select's only other ground for reconsideration relates to the dismissal of its tortious-interference claims involving Select's business dealings with Predict. *See Sterling Select II Advisory*, 2026 WL 734047, at *17-18. According to Select, those claims are "entirely independent of the breach of contract claim," and thus not duplicative, because those claims "all relate" to Argus Inc.'s "conduct after completion of" the SOW-3, which "expired [on] December 31, 2020." Reconsideration Motion at 13; *see* Dkt. 54 ("Am. Compl.") ¶¶ 113 (explaining that the SOW-3 "had a term of January 1, 2020 through December 31, 2020"), 219-231 (explaining how the Predict opportunity unfolded). If that is true, that is inconsistent with both Select's representation that it "does have a meritorious breach of contract claim for Argus [Inc.'s] nonperformance under the Product Partner strategy," Reconsideration Motion at 13, and the Amended Complaint's express allegation that Argus Inc.'s "conduct concerning the purported diligence necessary to qualify Predict as a Product Partner breached the terms of [the] SOW[-]3" on which the Court relied in dismissing the tortious-interference claims, Am. Compl. ¶ 354. *See Sterling Select II Advisory*, 2026 WL 734047, at *18 ("Select's business relationship and contract with Predict were premised on the Product Partner Strategy set forth in the SOW-3."). Select cannot have it both ways.

And to the extent that some of Argus Inc.'s allegedly tortious conduct towards Predict occurred before *and* after the SOW-3 expired—which is not at all clear from the allegations Select accuses the Court of "ignor[ing]," Reconsideration Motion at 13 (citing Am. Compl. ¶¶ 226-231)—that was not the argument Select made for why the allegedly "wrongful tortious conduct is independent of the legal duties Argus [Inc.] owed to Select under the BDA and SOWs." Dkt. 106 (Select's opposition to Argus Inc.'s motion to dismiss) at 24-25. Instead, Select argued that Argus Inc.'s "responsibilities as set forth in the BDA and SOWs related to its relationship with Select,

not any third parties," while "the tortious interference claims all relate to Argus [Inc.'s] conduct directed towards the third parties, not Select," so Argus Inc.'s "intentional, burdensome diligence requirements for Predict to become a Product Partner had nothing to do with any contractual responsibilities it had towards Select." *Id.* at 25. *But see* Am. Compl. ¶ 354 ("Argus [Inc.'s] conduct concerning the purported diligence necessary to qualify Predict as a Product Partner breached the terms of [the] SOW[-]3."). In other words, Select argued that the allegedly tortious conduct did not stem from the SOW-3, because the SOW-3 did not reach third parties like Predict, rather than arguing that such conduct postdated the contract. But it is well-established that "a party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 20 (S.D.N.Y. 2005). So the Court denies Select's reconsideration motion.[2]

**III. Verisk's Motion to Dismiss: Non-Jurisdictional Grounds**

As mentioned, the Court asked Select and Verisk, in order to "streamline jurisdictional discovery and next steps in this litigation," to "identify[] (1) threshold grounds, if any, on which this Court can resolve certain of Select's claims" against Verisk before addressing the personal-jurisdiction issue and "(2) specific claims dismissed as to Argus Inc. that should also be dismissed as to Verisk, in light of" its dismissal of non-contract claims against Argus Inc. on the merits. *Sterling Select II Advisory*, 2026 WL 734047, at *21. Out of the gate, Select "concedes that the Court may dismiss the Fourth Cause of Action (Tortious Interference with a Prospective Business Advantage) on statute of limitations grounds" as well as the "Twelfth Cause of Action (Breach of the Implied Covenant of Good Faith and Fair Dealing)" against Verisk. Select Threshold Br. at 5.

[2] The Court accordingly denies Select's request for oral argument on that motion as moot. *See* Dkt. 172.

The Court thus dismisses Counts Four and Twelve with prejudice. *See Sterling Select II Advisory*, 2026 WL 734047, at *19 (dismissing Select's good-faith-and-fair-dealing claim with prejudice); *Brandon v. Musoff*, No. 10 Civ. 9017 (KBF), 2012 WL 135592, at *4 (S.D.N.Y. Jan. 17, 2012) ("[W]hen a cause of action falls outside the applicable statute of limitations, dismissal with prejudice is justified.").

That leaves the following ten claims against Verisk:

- Breach of Contract—of the intellectual-property provision of the BDA (Count One), Am. Compl. ¶¶ 271-281;
- Misappropriation of Trade Secrets (Count Two), *id.* ¶¶ 282-292;
- Breach of Contract—of the revenue-sharing provisions of the BDA and the Statements of Work (Count Three), *id.* ¶¶ 293-301;
- Tortious Interference with a Prospective Business Advantage—the Predict opportunity (Count Five), *id.* ¶¶ 308-314;
- Tortious Interference with Contract—involving Predict (Count Six), *id.* ¶¶ 315-320;
- Breach of Contract—of the industry-standards provision of the BDA (Count Seven), *id.* ¶¶ 321-326;
- Breach of Contract—of the commercially-reasonable-resources provision of the SOW-2 (Count Eight), *id.* ¶¶ 327-332;
- Unjust Enrichment (Count Ten), *id.* ¶¶ 339-346;
- Breach of Contract—of the Product Partner Strategy provisions of the SOW-3 (Count Eleven), *id.* ¶¶ 347-355; and
- Fraud in the Inducement—involving the SOW-3 (Count Fifteen), *id.* ¶¶ 379-385.

A "federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)," although it "has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (internal quotation marks omitted). Verisk argues—and Select does not appear to dispute—that one such threshold ground

is that certain of Select's claims are time-barred. *Compare* Verisk Threshold Br. at 3-4 (arguing that "four of the five contract claims against Verisk are time-barred" and "[f]ive of the [s]even non-contract claims against Verisk are time-barred"), *with* Select Threshold Br. at 3-5 (acknowledging "Verisk plans to inform the Court that statute of limitations is a threshold ground upon which this Court could resolve Plaintiff's causes of action" and arguing that the limitations periods should be tolled to the date of Select's pre-motion letter while conceding that Count Four may be "dismiss[ed] . . . on statute of limitations grounds" notwithstanding any tolling). This Court agrees. Whether a plaintiff's "claims are time-barred, compelling dismissal, is a threshold question readily resolvable without addressing personal jurisdiction." *Rodriguez v. Norwegian Air Shuttle ASA*, 688 F. Supp. 3d 73, 81 (S.D.N.Y. 2023); *accord Moreira v. Société Générale, S.A.*, 125 F.4th 371, 379 n.1, 397 n.17 (2d Cir. 2025) (indicating that timeliness is such a threshold ground the consideration of which may precede a question of personal jurisdiction); *Garrasi v. Wells Fargo Bank, N.A.*, No. 22-921, 2024 WL 191802, at *1 (2d Cir. Jan. 18, 2024) (summary order) (similarly "consider[ing] the statute of limitations issue first").

The parties do dispute, however, to what extent the applicable statutes of limitations bar Select's claims against Verisk. The resolution of that dispute turns on when those statutes of limitations expired. Verisk argues it "was not joined as a defendant in this action until February 26, 2025, thus that is the date from which the Court should measure whether Plaintiff timely filed its claims against Verisk." Verisk Threshold Br. at 3-4; *accord* Dkt. 91 ("Verisk MTD") at 2 (similarly arguing that because Select "did not add Verisk to this action until February 26, 2025," and "[a]lmost all of the allegedly wrongful conduct described in the Amended Complaint took place long before that date," then "claims based on that alleged conduct are time-barred"). Select, for its part, argues that its claims were "tolled" as of August 18, 2023, the date it submitted a letter seeking permission from this Court to file its initial motion for leave to amend the complaint which

would ultimately add Verisk as a defendant, *see* Dkt. 26. Select Threshold Br. at 3-4 (citing *Tubiak v. Nielsen Co. (US)*, No. 15 Civ. 5159 (PKC), 2016 WL 796861, at *4 n.2 (S.D.N.Y. Feb. 25, 2016)); *see* Dkt. 105 ("Opposition to Verisk MTD") at 12-16 (similar).[3] Both parties are wrong.

"In diversity cases" like this one, "state statutes of limitations govern the timeliness of state law claims, and state law determines the related questions of what events serve to commence an action and to toll the statute of limitations." *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) (internal quotation marks omitted). Because Select's claims undisputedly "arise[] under" New York law, New York's tolling principles apply "in assessing the timeliness of [Select's] claim[s]." *Brandon v. Sensio, Inc.*, No. 25-1399, 2025 WL 3562625, at *3 (2d Cir. Dec. 12, 2025) (summary order). Under New York law, "the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion." *Perez v. Paramount Commc'ns, Inc.*, 709 N.E.2d 83, 85-87 (N.Y. 1999) (internal quotation marks omitted).[4] So the statutes of

[3] Select's August 18, 2023 pre-motion letter sought leave to move to "join additional parties," but only identified the Nielsen Company (US), LLC and TransUnion Corp. as potential Defendants, and did not mention Verisk. Dkt. 26.

[4] The only case Select cites for supporting a tolling date tethered to the filing of a pre-motion letter, rather than the proposed amended complaint itself, involved equitable tolling of a federal statute and not a New York state-law cause of action. *See* Select Threshold Br. at 3-4 (citing *Tubiak*, 2016 WL 796861, at *4 & n.2). Select cites no case under New York law for its position, and indeed different standards for equitable tolling exist under federal and New York law. *Compare Tubiak*, 2016 WL 796861, at *4 ("In deciding whether to equitably toll the limitations period, courts should consider whether plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." (internal quotation marks omitted)), *with Shared Commc'ns Servs. of ESR, Inc. v. Goldman, Sachs & Co.*, 832 N.Y.S.2d 32, 33-34 (1st Dep't 2007) (suggesting that "[t]he doctrine of equitable tolling is generally applied to federal causes of action in New York" and "under New York's doctrine of equitable estoppel" a plaintiff must "show that it was prevented from timely filing an action due to reasonable reliance by it on deception, fraud or misrepresentation by defendant" (internal quotation marks omitted)). Select makes no effort to satisfy New York's standard, and in any event, as mentioned above, *see supra* n.3, its pre-motion letter gave no indication that it would be adding Verisk as a defendant, *see* Dkt. 26. *Cf. Perez*, 709 N.E.2d at 86

limitations were tolled when Select filed its proposed amended complaint in connection with its motion for leave to file an amended complaint, which was on June 20, 2024. *See* Dkts. 39-41. Factoring in the seven days it took between this Court's order partly granting Select leave to file that complaint against Verisk, Dkt. 48, and the complaint's filing, Dkt. 54, the relevant date for statute-of-limitations purposes is thus June 27, 2024. It is that date—not February 26, 2025, and not August 18, 2023—"from which the Court should measure whether Plaintiff timely filed its claims against Verisk." Verisk Threshold Br. at 4. And because the parties have hinged their statutes-of-limitations arguments entirely on those wrong dates, the Court will allow the parties to specify precisely which claims, if any, are barred with the right date in mind. *Compare* Verisk Threshold Br. at 3-4 (using February 26, 2025 as "the date from which the Court should measure whether Plaintiff timely filed its claims against Verisk"), *and* Verisk MTD at 2, 16-23 (same), *with* Select Threshold Br. at 3-4 (using August 18, 2023 as the date that "its claims were tolled given that Plaintiff was required to obtain permission of the Court through the pre-motion letter process before it could file its initial motion for leave to amend"), *and* Opposition to Verisk MTD at 12-16 (same). To that end, the parties shall file letters by July 29, 2026, mindful to focus only on the claims against Verisk which have not yet been dismissed. *See supra* (Counts Four and Twelve); *infra* (Count Fifteen).

The only other way this Court may dismiss claims against Verisk without first resolving Verisk's personal-jurisdiction objection is to "address" any "facial challenge to the underlying cause of action" made by both Verisk and a party "over . . . whom the court indisputably has personal jurisdiction" —here, Argus Inc. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012). Under the *Naranjo* rule, because Argus Inc. did not move to dismiss Select's contract

---

(emphasizing that to toll the statute of limitations, a proposed amended complaint must "provide[] notice of the substance of those amendments" (internal quotation marks omitted)).

claims, *see* Dkt. 94 ("Argus MTD"), the Court cannot dismiss Select's contract claims against Verisk. And the Court dismissed most of Select's non-contract claims against Argus Inc. for being duplicative of Select's contract claims against Argus Inc. *See Sterling Select II Advisory*, 2026 WL 734047, at *16-19 (dismissing as duplicative Count Two for misappropriation of trade secrets, Counts Five and Six for tortious interference involving Predict, Count Ten for unjust enrichment, and Count Twelve for breach of the implied covenant of good faith and fair dealing). But unlike Argus Inc., Verisk disputes that there are any contracts binding it. *See* Verisk MTD at 16 ("Here, Plaintiff has not alleged—nor could it—that Verisk signed any of the agreements or is a party to any of the agreements. Indeed, it is clear from the Amended Complaint that the signatories and parties to the agreements were Select and Argus [Inc.]."); *accord* Verisk Threshold Br. at 1-2. So the Court cannot dismiss those same non-contract claims against Verisk on the grounds it dismissed the claims against Argus Inc.[5]

Perhaps sensing this conclusion, Verisk tries a different tack. Rather than relying on Argus Inc. as the relevant defendant for purposes of the *Naranjo* rule, Verisk argues that Select "failed to sufficiently plead its claims against Verisk[] in much the same manner the Court found [Select] failed to plead those claims *against TransUnion*." Verisk Threshold Br. at 1-3 (emphasis added). But the *Naranjo* rule applies only through Argus Inc., not TransUnion, because the Court did not "dismiss" any "claim[s]" against TransUnion, nor did it "indisputably ha[ve] personal jurisdiction" over TransUnion. *Naranjo*, 667 F.3d at 246 n.17. Recall that the Court simply denied Select leave to amend its Amended Complaint to add TransUnion as a defendant because amendment would

[5] The only exception, as Select acknowledges, is the good-faith-and-fair-dealing claim in Count Twelve, which—unlike "the other tort claims dismissed against Argus [Inc.]"—"requires the existence of a contract." Select Threshold Br. at 5; *see Sterling Select II Advisory*, 2026 WL 734047, at *19. Simply put, if Verisk were not subject to any of the contracts, the claim could not proceed against it, but if it were subject to the contracts, the claim as alleged would be dismissed as duplicative. Either way, Select rightly recognizes that this claim fails.

be futile. *See Sterling Select II Advisory*, 2026 WL 734047, at *21-24. It neither dismissed any claims against TransUnion, *contra* Verisk Threshold Br. at 1-3, nor held that it had personal jurisdiction over that entity. To the contrary, the Court explicitly declined to address a subject-matter-jurisdiction challenge to the proposed Second Amended Complaint because it "would be more efficient to explain why the proposed Second Amended Complaint's claims against TransUnion are futile now rather than later," *Sterling Select II Advisory*, 2026 WL 734047, at *22 n.6, and indeed there was a suggestion that personal jurisdiction over TransUnion would be disputed, *see* Dkt. 143 (Argus Inc.'s opposition to Select's motion for leave to amend) at 3, 11 (suggesting that TransUnion would "need to . . . file a motion to dismiss . . . related to whether the Court may exercise personal jurisdiction over TransUnion"). *Cf. Sinochem*, 549 U.S. at 430-31 ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."). So Verisk cannot piggyback off the reasons claims against TransUnion were futile; it is stuck with the grounds on which claims against Argus Inc. were found to be meritless.

There is, however, one ground (and thus one claim) which bears fruit for Verisk. Count Fifteen, for fraudulent inducement, was dismissed with prejudice against Argus Inc. for "fall[ing] short of the Rule 9(b) heightened pleading standard." *Sterling Select II Advisory*, 2026 WL 734047, at *21. Verisk moved to dismiss Count Fifteen on this same ground. Verisk MTD at 23-24 ("Plaintiff's allegations against Verisk, *specifically*, for this claim are woefully insufficient and plainly do not meet the heightened pleading requirements for fraud."). Verisk correctly points out that the "Court should dismiss this claim against Verisk, as it did as against Argus [Inc.]." Verisk Threshold Br. at 7. And because Select argues only that this ground should not be dismissed given its reconsideration motion, which the Court just denied, and baldly states that should the Court

deny the reconsideration motion the claim "should still be maintained as to Verisk" as Select "adequately pleaded these allegations against Verisk," Select Threshold Br. at 6, the Court dismisses Count Fifteen with prejudice, too.

In sum, the Court dismisses Counts Four, Twelve, and Fifteen against Verisk with prejudice. The Court may later dismiss more claims against Verisk after the parties submit their views on how the correct filing date of June 27, 2024 affects their statutes-of-limitations arguments. And while the Court cannot resolve Verisk's motion to dismiss for lack of personal jurisdiction at this time, it reminds the parties that Select must establish personal jurisdiction over Verisk "with respect to *each* claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004); *accord Sullivan v. UBS AG*, 149 F.4th 206, 217 (2d Cir. 2025) ("When, as here, plaintiffs are asserting specific personal jurisdiction, they must make that showing with respect to each claim asserted." (internal quotation marks omitted)). The parties should keep that principle in mind—focusing on the relevant remaining claims—when preparing for the upcoming evidentiary hearing.

## IV. Motions to Seal

Finally, in its post-jurisdictional discovery papers Select seeks to include "documents contain[ing] commercially sensitive, confidential, and proprietary information relating to technology and processes at issue in this case"; it thus moves to file certain of those documents under seal. Dkts. 193, 200. For the reasons already recognized by the Court, the requested sealing of Select's documents is appropriate. *See, e.g.*, Dkt. 179. The Court thus grants Select's motions to seal.

## V. Conclusion

For the above reasons, the Court denies Select's motion for reconsideration. The Court also dismisses Counts Four, Twelve, and Fifteen against Verisk with prejudice. As to the

remaining claims against Verisk, the parties shall file a letter by July 29, 2026, laying out precisely how the proper date of June 27, 2024 for statute-of-limitations purposes affects those claims. Finally, the Court grants the pending motions to seal.

This Opinion and Order shall initially be filed under seal. The parties shall have until July 29, 2026 to file any proposed redactions to this Opinion and Order, as well as a letter addressing why those redactions are justified under *Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110 (2d Cir. 2006). The parties shall submit a single set of proposed redactions but may explain any disagreements in their joint letter.

The Clerk of Court is respectfully directed to close Docket Numbers 167, 172, 193, and 200.

SO ORDERED.

Dated: July 22, 2026
New York, New York

JOHN P. CRONAN
United States District Judge